Jones, J.
Whether a partnership transacting business under a fictitious name is required to allege in its petition, as a prerequisite for recovery, the fact that it has complied with Section 8099 et seq., General Code, has been variously decided in this state by the lower courts.
Section 8104, General Code, provides that persons doing business as partners contrary to the provisions of the registration statutes, shall not commence or maintain an action until they first file the certificate required therein; but if such partners *213 at any time comply with such provisions, they may then commence an action, or if one has been commenced they may maintain it on all such partnership contracts, etc.
This section of the statute does not, in terms, require that the petition must allege compliance with the registration acts. The section denies the right of commencing or maintaining an action to those partnerships only which have neglected to comply with the provisions of registration. Partnerships doing business under fictitious names, which have complied, however, have the right to commence and maintain actions on account of contracts made or transactions had in their partnership name.
The question involved is not so much a question of the right to commence and maintain an action as it is the form of petition upon which such action is based. The want of allegation of compliance was attempted to be reached in this case by special demurrer. Under our code the demurrer challenges only those facts which appear upon the face of the petition. The alleged incapacity in this case does not appear upon the face of the petition, and therefore cannot be reached in the manner attempted. Taking into consideration the entire scope of the act, it would seem that it does not require, as a prerequisite to the bringing of an action of this character, that an allegation of compliance with the registration statute is necessary. Under its provisions any such partnership has the right not only to commence, but to maintain, an action, if it has complied with the provisions named. It will not be presumed in favor of the demurrer that a *214 plaintiff partnership nas not complied with the terms of the statute, and, by its express provisions, the plaintiff could at any time amend its pleadings to show compliance therewith. Noncompliance with the provisions relating to registration is defensive matter, may be interposed as such, and will defeat the action unless compliance with Section 8099, General Code, be made during the progress of the cause. In this case, on the trial, the plaintiff did in fact offer proof of proper registration.
As developed upon the trial, under the issues joined, the real question was whether primary liability attached and credit was given to the defendant Anna Walsh for the goods delivered to Frank Lenderman; of whether her engagement was collateral and thus within the statute of frauds under a promise to become liable for Lenderman’s debt.
An examination of the record shows that the entire testimony was based upon that issue. When the special interrogatory relating to this issue was given to the jury, the court said: “Also in addition to that, you will return what is known in law as a special verdict: ‘In the contract or agreement for the sale of the goods, involved in this case, did Anna Walsh agree to pay for the same if Frank Lenderman did, or would, not?’ That may be somewhat misleading and let me help you to understand what that means. If on one hand you find that this original contract was made with Mrs. Walsh and they entered into an agreement by which she purchased those goods from J. R. Thomas’ Sons and by her assent they gave her credit for it and not Lenderman, then of course this *215 answer would be 'no.’ It is only when you find, if you shall find from the evidence or fail to find, rather, by the preponderating weight of the evidence, that that was so, which I have just said to you — that this agreement was made between Mrs. Walsh and J. R. Thomas’ Sons — will you inquire into the question of whether she made a promise to pay the debt of Lenderman. If she made a promise to pay the debt of Lenderman and the contract was made with Lenderman, and she says T will pay for Lenderman if he don’t,’ she. is not liable, as I have said to you. So that, gentlemen, you may take the special verdict and answer it as you find.” •
Whenever a proper special finding is submitted to the jury upon a controlling, ultimate fact, the statute makes it the imperative duty of the court to submit such question for their determination. The question propounded to them, if answered in the affirmative, would have determined the issues between the parties in favor of the defendant. It was in nowise misleading, as the court stated, and required neither explanation nor comment. Under our code the duty of the court in relation to its instructions to the jury is clear. The province of the court is to apply the law governing the case to the facts produced on the trial, and this is done in the course of its general charge or by special instructions asked to be given by the parties. In connection with special interrogatories it is not proper for the court to explain to the jury what the legal effect of the answer may or may not be. In the instant case the court said to the jury that if they found that the promise of the defendant was to pay for *216 Lenderman if he did not, then, in that event, she would not be liable. Thus the court warned the jury what would be the legal effect of .its answer, and it could trim its course accordingly. This was error. And there is no reason why the same rule applying to special verdicts under another section of the code should not apply as well to the special findings of fact made by the jury. Explaining the legal effect of answers in cases of special verdicts has been held erroneous in the following cases: Morrison v. Lee, 13 N. D., 591, 102 N. W. Rep., 223; Musbach v. Wisconsin Chair Co., 108 Wis., 57.
In this connection the court also directed the jury to answer the question only in the event that they found that there was no agreement between Mrs. Walsh and the plaintiff by reason of which plaintiff gave her credit for the goods. It directed the jury to answer negatively, after it had first determined favorably plaintiff’s contention on the issue tendered by it. This is tantamount to saying that if they found for the plaintiff in their general verdict, their answer, to be consistent, must be “no.” It was an evident effort on the part of the court to effect consistency between the answer and the general verdict.
Section 11464, General Code, provides: “When a special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly.”
The purpose and spirit of this section of the statute were contravened in the effort of the court to harmonize the special findings of the jury with *217 the general verdict. The purpose of the section was to give either party in the case the right to demand, uninfluenced by the action of the court, an answer upon a controlling issue without regard to the general verdict. It frequently happens in the trial of a case that the controlling issue of fact thus specially found by the jury may be inconsistent with the general verdict; and to interfere with the province of the jury in this respect, by instruction, explanation, comment or suggestion that would seek to harmonize the answers with the general verdict or with other special findings submitted to them for determination, is clearly erroneous and prejudicial. Beecher v. Galvin et al., 71 Mich., 391.
Complaint is also made as to the misconduct of counsel in his closing argument to the jury upon this point. In discussing the question of the statute of frauds and the special interrogatory propounded to the jury, counsel stated in argument: “It seems to me my friend has been subconsciously trying and purposely trying to befuddle you and get you to think that this question of the statute of frauds is in this case. It ain’t. It has nothing to do with this statute. And I say this because he has asked you and the court will instruct you to answer in writing by ‘yes’ or ‘no’ a special finding, and the special finding involves only this question of statute of frauds. * * * Now gentlemen I say to you I want you and I think under the evidence you ought to answer that question ‘no.’ I don’t want you to get an idea into your head that this statute of frauds gets into this case for it don’t.”
The argument of counsel in this connection was *218 wholly improper and beyond the field of legitimate argument. While it is proper for counsel to comment upon the facts involved in a special finding, it is improper to impeach the action of the court, by denying that questions propounded are involved in the case, or to caution the jury how the question should be specifically answered. An examination of the record, however, will disclose that opposing counsel did not make any objection at that time. At the close of the entire argument a general objection was made. In view of the fact that the court’s attention was not directed at the time to the improper remarks, so that the court might take proper action thereon, this question is not available to plaintiff in error.
The record discloses that the account sued upon was based upon items ranging from September 2, 1911, to July 2, 1912. The reliance of the plaintiff below was based upon testimony tending to show that the defendant, Mrs. Walsh, had pledged her credit as a debtor for an indefinite length of time for goods which were to be delivered to Lenderman. Upon the trial the defendant asked that the following separate written instruction be given to the jury before argument, which the court refused: “If you find from the preponderance of the evidence, that on or about September 30, 1911, the defendant, Anna Walsh, personally or through Frank Lender-man, as her agent, objected to the plaintiff or its representatives, to having the goods delivered to the store of Frank Lenderman, charged to the credit of Anna Walsh, and that she was informed by the plaintiff, or its representatives, that, this would no *219 longer be done, and if you find further, from the preponderance of the evidence, that the bills for the goods thereafter delivered did not bear the name of the defendant, then the plaintiff cannot recover arid your verdict must be for the defendant.”
If the testimony tended to develop that, after pledging her credit for the delivery of the goods to Lenderman for an indefinite time, the defendant had cancelled her obligation by notifying the plaintiff not to deliver any more goods under such an agreement, in that event the defendant would not be liable after the time such notice was given. However, the record discloses that there is no testimony upon which this charge could be based. The entire contention of the defendant was that she had made no promise whatever by which she should be charged, and, consistently with this attitude, she offered no testimony which recognized her in any way as the primary debtor. There is no testimony in the record which discloses the fact that either the defendant or any one for her, and with her assent, had notified the plaintiff not to furnish further goods to Lenderman, and there was no error upon the part of the court in refusing to give the special request.
Judgment of the court of appeals will be reversed and the case remanded to the common pleas court for further proceedings according to law.

Judgment reversed, and cause remanded.

Nichols, C. J., Johnson, Donahue, Newman and Matthias, JJ., concur.