THE MECHANICS' BANK OF DETROIT v. WILLIAM H. BARNES, CYRUS B. BARNES, AND CHARLES O. BARNES, IMPLEADED WITH EPHRAIM K. ROBERTS.

*Partnership—Accommodation indorsement—Verdict.*

The question involved in this case is the liability of one of three partners upon an accommodation indorsement of a note in the firm name, made by another partner with the knowledge of the third. It was shown that other like indorsements had been made for the same maker, and that he had made and also indorsed paper for the accommodation of the firm, for the purpose of showing the knowledge or assent of the third partner to the indorsement in question. The jury, in answer to special questions, found a want of such knowledge or assent on his part, and answered that they were unable to find whether he authorized his partners to sign the firm name as accommodation indorsers to promissory notes for third parties, although instructed that they might infer such fact from the facts shown, and rendered a general verdict for the plaintiff.

1. Mr. Justice LONG filed an opinion, concurred in by MORSE, J., holding:

   *a*—As a general rule, if a party takes negotiable paper indorsed by one partner in the firm name, knowing that it

was indorsed merely as a surety, he does so at his peril, and cannot charge the members of the firm who did not assent to the transaction.

b—The possession of the note by the maker after such indorsement is sufficient to charge a bank which discounts it with notice that it is an accommodation indorsement, and the payment of the avails to the maker is evidence that the transaction was purely in his interest.

c—In such a case a legal presumption arises against the assent of all of the partners to such use of the firm name, and the burden of proving it is cast upon the bank, which assent may be shown by the circumstances of the case.

d—In this case, the jury having been directed that they could infer such consent from the facts shown, and not having done so, there is nothing upon which the general verdict can rest, and it amounts to a mistrial.

e—It is error for the court to direct the jury that their answers to special questions must agree with their general verdict.

2. CHAMPLIN, C. J., and McGRATH, J., concurred in a reversal, on the ground that the appellant, William H. Barnes, is not liable under the facts proven, and that the judgment should have been in his favor.

Error to Wayne. (Brevoort, J.) Argued May 8, 1891. Decided July 28, 1891.

*Assumpsit.* Defendant.William H. Barnes brings error. Reversed. The facts are stated in the opinion.

*C. E. Warner,* for appellant, contended:

1. If a person takes negotiable paper, either made or indorsed by one partner in the firm name, knowing that the name of the firm was indorsed merely as surety, he takes it at his peril, and cannot charge the partners who have not assented to the transaction; citing *Joyce v. Williams,* 14 Wend. 141; *Bank v. Bowen,* 7 Id. 158; *Stall v. Bank,* 18 Id. 466, 478; *Butler v. Stocking,* 8 N. Y. 410; *Bank .v. Bank,* 14 Id. 629; *Bank v. Bank,* 16 Id. 135; *Bank v. Monteath,* 26 Id. 509; *Heffron v. Hanaford,* 40 Mich. 305.

2. The burden of proving the authority or consent of the copartners rests upon the holder of the note; citing *Butler v. Stocking,* 8 N. Y. 408, 410; *Tanner v. Hall,* 1 Penn. St. 417; *Hen-*

*drie v. Berkowitz,* 87 Cal. 113; *Bank v. Bowen,* 7 Wend. 159; *Austin v. Vandermark,* 4 Hill, 262; *Gansevoort v. Williams,* °14 Wend. 133; *Insurance Co. v. Bennett,* 5 Conn. 580; *Darling v. March,* 22 Me. 184; *Smith v. Sloan,* 37 Wis. 285.

3. The effect of the answer to the last question was a mistrial. The answer is inconsistent with the general verdict; citing *Harbaugh v. Cicott,* 33 Mich. 241; *Maclean v. Scripps,* 52 Id. 222; *Wilson v. Railroad Co.,* 57 Id. 155.

*Bowen, Douglas & Whiting,* for plaintiff, contended:

1. In support of the right of the jury to infer assent to the indorsement from interchange of indorsements, etc., counsel cited *Darling v. March,* 22 Me. 184; 15 Cent. Law J. 222.

2. Whether the act of a partner is within the scope of the business of the partnership, or whether in doing the contested act he was conducting the business in the ordinary way, is a question of fact for the jury; citing Thomp. Tr. § 1380; Abb. Tr. Ev. 214.

3. The jury had a right to infer that W. H. Barnes knew of the existence of this accommodation paper, and the rule must apply that, as between two innocent parties, the one who placed it within the power of the other to cause the injury should suffer; citing Chitty, Cont. 249; Edw. Bills, § 106.

4. If it appears that a partner was in the habit of indorsing at the bank or elsewhere for another, such general course of dealing should be sufficient evidence of authority from all of the members of the firm, and such use of the firm name by one would bind all; citing *Bank v. Saffarrans,* 3 Humph. 597; *Duncan v. Lowndes,* 3 Camp. 478; *Bank v. Breese,* 39 Iowa, 640; *Bank v. Alberger,* 101 N. Y. 202; *Bank v. Brooking,* 2 Litt. 41; Story, Part. § 127; Story, Ag. §§ 54, 56, 84, 89, and cases cited; *Gansevoort v. Williams,* 14 Wend. 139; *Sweetser v. French,* 2 Cush. 315.

5. The answer, "Don't know," to the fourth question, is in harmony with the general verdict, it having reference to their knowledge as to whether W. H. Barnes had given *express* authority or had *express* knowledge; citing *Foster v. Gaffield,* 34 Mich. 356.

LONG, J. This action was brought in the Wayne circuit court upon the following promissory note:

"$2,000.                    DETROIT, Aug. 21, 1889.
"Three months after date I promise to pay to the order

of Barnes Bros. two thousand dollars, at the Citizens' Savings Bank. Value received.

"E. K. ROBERTS."

Indorsed: "BARNES BROS."

William H. Barnes and Cyrus B. Barnes filed separate pleas with affidavits attached denying the execution of the note, and averring that, if the note was indorsed by Barnes Bros., it was indorsed and delivered by one of said copartners without the authority, express or implied, of these defendants, and against the express agreement upon which the copartnership was created, and without the knowledge or consent of said defendants, and for purposes outside the partnership business. It appears that after the note was indorsed by Barnes Bros. it was presented to the Mechanics' Bank by Roberts, the maker, and was discounted by that bank for Roberts, on August 28, 1889, the avails being paid directly to Roberts; the note having been indorsed by Barnes Bros. purely for the accommodation of Roberts. The cause was tried before a jury, who rendered a verdict in favor of the plaintiff for the amount of the note and the interest, upon which judgment was entered. Defendant William H. Barnes alone brings the case to this Court by writ of error. On the trial it was practically conceded that Cyrus B. Barnes was liable with Charles O., who indorsed the firm name on the note, as Cyrus was shown to have full knowledge of the note and its indorsement, and had promised to pay it.

It appears that Barnes Bros. carried on a wholesale paper business in Detroit for many years. They also had a paper-mill at Rochester, this State. Cyrus B. and Charles O. Barnes conducted all the business in Detroit, handled all the money, paid all the bills, borrowed money when necessary, and apparently had full authority in the conduct and charge of the Detroit business. William H.

Barnes looked after the mill at Rochester, and occasionally went to Detroit to look after the business there. Upon that subject William H. Barnes testified as follows:

" I live in Rochester, and have lived there for about 20 years. I look after the mill; run the paper-mill. The mill belongs to Barnes Bros. I have been running it. Some portion of it has been running all the time. I take general charge of the mill. The title to the mill has been in the name of Barnes Bros. Cyrus B. resides in Detroit; Charles O., in Ypsilanti. Cyrus B. and Charles O. have been in Detroit running the store. I sometimes came every two or three months, and perhaps every week, and sometimes perhaps six months. My part of the business has been principally in looking after the mill. The books have been kept at the store. I suppose you might say that Cyrus B. and Charles O. have almost the entire charge of the financial part of the business, as-the books were kept there, and the money taken in on collections and sales. I presume the firm has borrowed money. I do not know about it. Cyrus B. and Charles O. had full authority to borrow money for running the business. I did not know anything about it. They had authority for borrowing money, if they did borrow it, so far as running the business was concerned.

" I do not know of any notes they have made within the last five years. I do not know of any instances where they have indorsed the firm's name within the last five years, except the cases that have been presented here. I do not know of any other case of any character, where they have indorsed the firm name either for my benefit or otherwise. I did not keep the books, and had nothing to do with them. I very seldom examined them. I have not examined them within the last five years. I have taken and looked into them sometimes to look up some particular account. But to examine the books they have a regular book-keeper there. I relied upon them in the conduct of the business to a certain extent. I have the fullest confidence in Cyrus B. and Charles O. I always thought they were straight in regard to that, to carry out our agreement and arrangement. *  *  *

" Cyrus never had authority to do anything outside of

the firm, not from me. I never knew anything about the firm raising any money by making paper and getting indorsements from anybody else. I never knew of the firm getting any money by their own indorsement of some other person's paper. · I have not examined the books at any time to see whether they were doing that or not, and within the last five years I have only examined particular accounts. * * * * * * *

"In 1875 I was told that they had indorsed some paper for somebody else. I did not know the party that was indorsed for, or the bank, and never heard of it afterwards, but was told what had been done. I did not know whether it was ever put in circulation, or whether it was ever released, but I was told by outside parties. So I wrote them a letter and asked about it afterwards. I did not look on the books, to see what it was. They claimed they did not indorse any at that time. I did not look on the bills-payable book. I·did not go around to the banks, and attempt to find out what the paper was. I do not know that there was any paper. I was simply told that by outside parties.

"In 1889, I think the firm was banking at the Dime Savings Bank. I can't tell where the firm was banking in 1888. It might have been at the Dime Savings Bank, or it might have been at some of the others. I presume, if a note had been protested upon ˍwhich the firm were the indorsers, taken in the usual course of business, and otherwise, and a notice had been sent, it would come to the firm here in Detroit, and, if it was delivered at the store, either Cyrus or Charles O. would take care of it. I do not know that it would be very likely to come to my attention. I suppose if a protest was received on a note it would be likely to go to the firm of Barnes Bros. at their place of business, and I would not be very likely to see it. In 1889, I presume there were four or five months, and perhaps six months, I was not in. I was sick at the time. I have been out of health a good deal. I did not come to Detroit in from one to six months. During that time I attended to the business out there, manufacturing of paper. I do most of the business of buying of stock for the mill. I pay no attention to the paper stock, and the collection of accounts. I paid no attention to the banking of paper in the course of trade, and the taking care of the paper when it became due.

"REDIRECT:

"I had confidence in my brothers to attend to the firm business in Detroit. I did not mean to say that I understood they had any authority, or that I intended to give them any authority, to do anything outside of the firm business.

"Q. I call your attention to letter under date of January 19, 1875."

The letter was produced and shown to the witness, and the witness said that the letter was transmitted to his brothers. Said letter was thereupon offered and admitted in evidence, and marked "Exhibit D," and is as follows:

"ROCHESTER, January 19, 1875.

"MESSRS. BARNES BROS.—GENTS: When I was out to Ypsilanti last week I was told by Lambert that you were exchanging checks and notes with parties in the city. If that is the case, it has got to be stopped at once. I suppose you know what our agreement is, and, if you will do it, I shall withdraw from the firm, for I will not allow anything of the kind. Not but what the parties may be all right, but it is no way to do business, and it must be stopped.

"Yours,   W. H. BARNES."

It is claimed by counsel for the plaintiff that it is thus made apparent that W. H. Barnes gave up the financial end of the business to his brothers, and, if the necessities required it, Cyrus B. and Charles O. had full power to do whatever they chose towards raising money. It is also contended that Barnes Bros. were under obligations to Roberts to indorse his paper, for the reason that Roberts had been accustomed to indorse for Barnes Bros.; that is, that the parties had been exchanging credit by indorsing for each other.

Roberts was president of the Citizens' Savings Bank. He testifies that Cyrus B. Barnes made a note of $1,000 to his order. Charles O. was present, and they asked him to indorse it and get the money on it, which he

did, of Mr. Butler, at the Mechanics' Bank of Detroit. The Barnes firm took their business thereafter to the Dime Savings Bank. In 1888 they made another note of $10,000, which Roberts indorsed, and the money was got by the Barnes Bros. In 1889 two $500 notes were made by Roberts, indorsed by Barnes Bros., and taken by Roberts to the Mechanics' Bank, and discounted, and the money paid over to Barnes Bros. These indorsements and the two $500 notes were made at the request of Cyrus B., but it appears with the full knowledge of Charles O., and there is no question but that the moneys were all used in the partnership business. The note in suit was made on August 21, 1889, by Roberts, and indorsed by Barnes Bros., and presented by Roberts to plaintiff, the Mechanics' Bank of Detroit, for discount on August 28. At the time the note in suit was presented for discount, the two $500 notes indorsed by Barnes Bros. were then held by plaintiff, not having yet matured. They were subsequently paid by Barnes Bros. When the note in suit became due, Charles O. promised to pay it, but wanted to renew it. The renewal had been drawn up, signed by Roberts, and indorsed, " Barnes Bros.," by Cyrus B. The renewal was refused by Mr. Butler. It appears, further, that Barnes Bros., on June 11, 1889, indorsed another note for Roberts of $2,000, which was discounted at the Michigan Savings Bank. It was not paid at maturity, and was renewed; Barnes Bros. becoming indorsers on the renewal. It appears also that, in 1888, Barnes Bros. became the indorsers upon a note of Roberts for $2,000, which was discounted at the American Exchange National Bank. This paper has been renewed from time to time, and Barnes Bros. remain upon it as indorsers. This appears to have been for the accommodation of Roberts, and the indorsements were made by

Cyrus B. evidently with the knowledge. and assent of Charles O. Barnes.

At the close of the testimony counsel for defendants submitted the following special findings to the jury, to which they returned answers:

"1. Do you find that the defendant William H. Barnes had any knowledge of the indorsement of Barnes Bros. upon the note in suit at the time such indorsement was made?

"A. No.

"2. Do you find that the defendant William H. Barnes ever assented to the indorsement of the name of Barnes Bros. upon the note in suit, if such indorsement was made?

"A. No.

"3. Do you find that the note in question was given by Roberts for his own use and benefit, and that such note was indorsed by Barnes Bros. for the accommodation of Roberts, and that Roberts personally received the money upon the same?

"A. Yes.

"4. Did William H. Barnes authorize his partners to sign the firm name as accommodation indorsers to. promissory notes for third persons?

"A. Don't know."

The jury returned a general verdict for plaintiff for the amount of the note and interest. Defendants thereafter moved to set aside the general verdict, and to enter verdict on the findings for the defendants, which was refused. The court entered judgment on the general verdict in favor of plaintiff for the amount claimed.

By the answers to these special questions the jury found that William H. Barnes had no knowledge of the indorsement of the firm name upon the note in suit, and never assented to its being placed there, but whether he ever authorized his partners to sign the firm name as accommodation indorsers to promissory notes for third persons they were unable to find. They did find that the note

was given by Roberts for his own use and benefit, and that it was indorsed by Barnes Bros. for his accommodation, and he personally received the money upon it.

The court instructed the jury, at the request of counsel for the plaintiff, as follows:

"1. If one or more of the defendants were in the habit of indorsing notes in the name of the firm, made by E. K. Roberts, for his accommodation, you are entitled to infer that the members of the firm who indorsed on behalf of the firm had authority to do it.

"2. If the firm of Barnes Bros. received the avails of, and paid in due course, notes made by Roberts and indorsed by the firm, they cannot repudiate notes of like kind subsequently made, the proceeds of which Roberts received.

"3. If the firm of Barnes Bros. became the indorsers of notes made by Roberts, which were negotiated for the firm's benefit, it became liable upon the like note in suit, although the same was negotiated by Roberts for his own benefit.

"4. By receiving the avails of notes made by Roberts indorsed by the firm, which notes were negotiated by Roberts in person, the firm authorized the plaintiff to deal with the note in suit as the obligation of the firm, with respect to which the several members of the firm were liable.

"5. It is a principle of law that, when one of two innocent persons must suffer, the loss falls upon the one who has put it within the power of the guilty person to perpetrate the fraud; and if in this case you believe that W. H. Barnes could, with ordinary care, either by the examination of the books of Barnes Bros. or by inquiry, have ascertained there was paper outstanding, made by Roberts and indorsed by Barnes Bros., similar to the paper in suit, and he failed to make any such inquiry or investigation, but left the entire financial management of the business to his partners, Charles O. Barnes and Cyrus B. Barnes, then any claim on his part of ignorance of such transactions can be no defense to this case, and the plaintiff would be entitled to recover."

Following these requests of plantiff's counsel the court instructed the jury as follows:

86 MICH.—41.

"The evidence shows that the note in suit was made or executed by Roberts for his personal use and purposes, and that he secured the indorsement of Barnes Bros. as an accommodation for his (Roberts') use and benefit, and that such note was taken to plaintiff's bank by said Roberts, and discounted by said bank for the use and benefit of Roberts, and the avails of said discount given directly to said Roberts. Barnes Bros. had no actual or pecuniary interest in said note. Under these circumstances, it must be presumed that said indorsement was purely an accommodation indorsement, and any member of Barnes Bros. not assenting to such indorsement is not bound by it. There is no evidence in the case that plaintiff, at the time of discounting the note, took said note upon any other understanding than that expressed in the note itself; and said note having been made by said Roberts, and indorsed by said Barnes Bros., and the same having been presented and discounted by said bank, and for the benefit of said Roberts, such facts and circumstances show that said indorsement was an accommodation indorsement only, and I will leave it to you to say, under all the evidence, if all the partners knew of its indorsement."

The principal contention of defendants' counsel is that the burden rested with the plaintiff to prove the authority or consent of the defendant William H. Barnes to the indorsement of the firm name upon the note, or that the firm of which he was a member was interested in the loan; that the firm was not interested in the loan, and that the jury were unable to find, and did not find, that William H. Barnes ever authorized the use of the firm's name thereon, or assented to its use; and that, therefore, the court was in error in not entering judgment for the defendants. This is assigned as error.

It will be seen from what took place on the trial, in the rulings of the trial court and its general charge, that the theory adopted by the court was, and the jury were led to follow it in finding their general verdict, that one or more of the defendants had been in the habit of

indorsing notes in the name of the firm, made by Roberts, for his accommodation, and it might be inferred that the member of the firm who indorsed for the firm had authority to do it; or that, if the firm received the avails of, and paid in due course, notes made by Roberts and indorsed by the firm, they could not repudiate notes of like kind subsequently made, the proceeds of which Roberts received; or that, if the firm became indorsers of notes made by Roberts, which were negotiated for the firm's benefit, it became liable upon the like note in suit, although the same was negotiated by Roberts for his own benefit; or that, by receiving the avails of notes made by Roberts indorsed by the firm, which notes were negotiated by Roberts in person, the firm authorized the plaintiff to deal with the note in suit as the obligation of the firm, with respect to which the several members of the firm were liable; or that either the bank or William H. Barnes must suffer, and that had William H. Barnes exercised ordinary care he might have before ascertained that paper was being indorsed by the firm for Roberts' benefit, and thus have prevented a fraud being practiced upon the bank.

It is contended by counsel for the plaintiff that the special findings of the jury should not have the construction given them by counsel for the defendants; that the finding of the jury that William H. Barnes had no knowledge of the indorsement of Barnes Bros. on the note in suit was limited to the fact that he had no actual knowledge, and the finding that he never assented to it is simply a finding that he did not expressly assent. This claim is based on the testimony in the case, which it is claimed abundantly shows that Cyrus B. and Charles O. impliedly had this authority. We think the jury must have taken this view of the case under the charge of the court, and answered the special questions in this view,

or they could not have found a general verdict in favor of the plaintiff.

It is said by counsel for the defendants that, the jury being unable to determine whether William H. Barnes ever authorized his partners to sign the firm's name as accommodation indorsers to promissory notes for third persons, they should have returned a general verdict for the defendants, and the court should have so directed, as the burden of proving the authority rested upon the plaintiff; that this fact is not proved, and under the evidence the jury were unable to find it.

The general rule is that, if a party takes negotiable paper, either made or indorsed by one of the partners of a firm in the partnership name, knowing that the name of the firm was indorsed merely as a surety, he takes it at his peril, and he cannot charge the members of the firm who have not assented to the transaction. It must be admitted that Mr. Butler, acting for the bank, knew that the firm of Barnes Bros. were merely accommodation indorsers. The note was made payable to their order, and indorsed by them in blank, and Mr. Roberts, the maker, presented the note for discount, and received the avails. The fact of the possession of the note by Roberts, the maker, after the indorsement of the name of the firm, was sufficient to charge the bank with notice that the indorsement of Barnes Bros. was that of accommodation indorsers, and the payment of the avails of it to Roberts was of itself evidence that the transaction was purely for Roberts' interest, and not for the indorsers.

These facts being known to the bank, the legal presumption arises against the assent of all the partners to such use of the firm's name, and the burden of proving it is cast upon the bank. *Insurance Co. v. Bennett*, 5 Conn. 574; *Williams v. Walbridge*, 3 Wend. 415; *Hen-*

*drie v. Berkowitz,* 37 Cal. 113.    But the burden which the law puts upon the plaintiff, under such circumstances, to prove such authority, is not limited to direct and positive proof.    It may be shown by the circumstances of the case.    But the jury failed entirely to find the facts, even from the circumstances, which were fully submitted to them under the charge of the court at the request of plaintiff's counsel.    The fact of the interchange of indorsements and the indorsement by Roberts for the firm's benefit, and the number of indorsements made between the parties, were all allowed to go to the jury, and we think very properly, for the purpose of showing the knowledge or assent of William H. Barnes thereto; yet the jury were unable to find that William H. Barnes ever authorized the partners to sign the firm name as accommodation indorsers for third persons, but did find that William H. Barnes had no knowledge of the indorsement of the note in suit, and never assented to it.    The burden was upon the plaintiff to show these facts, and the jury were directed that such inferences might be drawn from the facts shown.    But they have not done so, and consequently there was nothing upon which the general verdict could rest in favor of the plaintiff.    This amounted to a mistrial.    *Crane v. Reeder,* 25 Mich. 303; *Harbaugh v. Cicott,* 33 Id. 241; *Cole v. Boyd,* 47 Id. 98; *Wilson v. Railroad Co.,* 57 Id. 155.

It is also claimed that it was error for the court to direct the jury that their findings must agree with their general verdict.    It appears that after the jury had deliberated for a time they came into court, and asked if the special questions could be answered, "We do not know," as well as "Yes" or "No," and were told by the court that they could be answered in that way, but that the special questions answered must agree with their general verdict.    It was said by Mr. Justice CAMPBELL

in *Cole v. Boyd*, 47 Mich. 98, that the purpose of the statute in allowing special questions to be put to the jury—

" Is to enable the court to know what view the jury take of the material issues, and to correct their possibly wrong inferences from the facts which they find to exist."

In that case the jury found a general verdict, and then announced that they were unable to agree upon the special questions, and they were told by the court that, having found a general verdict, they were bound to answer these questions in harmony with it. This was held to be error. This case was cited and approved in *Maclean v. Scripps*, 52 Mich. 250. The court was therefore in error in this direction to the jury.

We shall not discuss the other errors assigned upon this record.

The verdict and judgment must be reversed, with costs, and a new trial ordered.

MORSE, J., concurred with LONG, J.

CHAMPLIN, C. J. I do not think that William. H. Barnes is liable under the facts proven, and the judgment should have been in his favor.

McGRATH, J., concurred with CHAMPLIN, C. J.

GRANT, J., did not sit.