TAYLOR *v.* DAVARN.

1. ACTION—PARTIES—INTOXICATING LIQUORS—PRINCIPAL AND SURETY—SURETY ON LIQUOR BOND—CIVIL-DAMAGE ACTION—VENUE.

Act No. 266, Pub. Acts 1895, as amended (Act No. 321, Pub. Acts 1907, 3 Comp. Laws 1915, § 12340 *et seq.*), provides that suits may be commenced in the circuit court in any county in which plaintiff resides, in actions to enforce the civil-damage statute, service to be made on the surety company by serving the insurance commissioner with a copy of the process and such corporation shall appoint the commissioner in writing as its agent to accept service. Plaintiff brought a civil-damage action in Ionia county where she resided, and joined three saloon keepers, residents of other counties, as parties defendant. *Held*, that the action was properly commenced in the county of plaintiff's residence.

2. CONSTITUTIONAL LAW—SERVICE OF PROCESS—TITLE OF STATUTE.

The title of Act No. 321, Pub. Acts 1907, was sufficient to comply with the constitutional requirement that the object be expressed in the title.

3. APPEAL AND ERROR — COMMISSIONER OF INSURANCE — SERVICE — SAVING QUESTIONS FOR REVIEW.

An objection that the method of service on the commissioner of insurance was invalid, not raised in the trial court, could not be considered on appeal.

4. INTOXICATING LIQUORS—EVIDENCE—DEATH.

In a civil-damage action for the death of plaintiff's husband from intoxicants furnished by defendant saloon keepers, evidence that decedent had five drinks of whisky in the several saloons, that he probably drank more, and conflicting evidence from which it might fairly be inferred that he was intoxicated when arrested, and that he caused a fire in the jail, and died as a result thereof, was properly left to the jury as an issue of fact.

5. SAME—INSTRUCTIONS—TRIAL.

Where defendant requested the court to submit to the jury a special question whether or not plaintiff's husband was intoxicated, and the court advised the jury that in order to find for plaintiff they must find that decedent was intoxicated when he came to his death, and so if they found for plaintiff the answer to the special question would be

"yes," but if they found for defendants their answer should be "no," and later, when the jury had gone out, they were called back and advised that if they found for defendants their answer to the special question would not be material and if they found for plaintiff they must necessarily answer the question proposed by defendants, "yes," the instructions were objectionable, because the jury were informed how to make the answer to the special question consistent with the general verdict.

Error to Ionia; Perkins, J., presiding. Submitted June 24, 1915. (Docket No. 45.) Decided April 21, 1916.

Case by Elizabeth Taylor against James Davarn and the Michigan Bonding & Surety Company and others for unlawful sales of intoxicating liquor, resulting in the death of Benjamin Taylor, plaintiff's husband. Judgment for plaintiff. Defendants bring error. Reversed.

*Ellis & Ellis,* for appellants Davarn and Hosley.

*S. Wesselius,* for appellant Gould.

*A. F. Bunting,* for Michigan Bonding & Surety Company.

*Alfred R. Locke* and *R. A. Hawley,* for appellee.

BIRD, J. Plaintiff recovered a judgment under the civil-damage act in the Ionia circuit court, against the defendant saloon keepers and their surety, the Michigan Bonding Company, for the unlawful acts of the saloon keepers in having contributed to the death of her husband on April 1, 1913, in the village of Lowell. Defendants have assigned error.

Plaintiff's husband, Ben Taylor, on April 1, 1913, drove a pair of horses from Saranac to Lowell, and arrived there at about 3 o'clock in the afternoon. Upon his arrival, he and his companion visited the saloons conducted by the defendants, and drank intoxicating liquor. About two hours later they entered their car-

riage to return to Saranac, but before doing so, Taylor drove up and down the main street so immoderately that he was arrested for fast driving, and locked up by the deputy sheriff in the village jail. At 7 o'clock a fire was discovered in the cell in which Taylor had been placed, and he was so overcome by the smoke and fire that he died soon thereafter. The theory upon which plaintiff recovered was that her husband was a person in the habit of becoming intoxicated; that he became intoxicated by liquor drunk at the saloons of the defendants, and when taken to jail he was intoxicated, and that such intoxication caused or contributed to his death. The testimony showed that the jail was heated with steam, lighted with electricity, and that there was no fire in or about the building, and plaintiff argued from this that Taylor was responsible for the fire which subsequently caused his death.

1. The appellants raise the question that the circuit court had no jurisdiction to render the judgment, because it never acquired jurisdiction of the parties defendant. Plaintiff resides in Ionia county, defendants Davarn, Hosley, and Gould reside in Kent county, and the principal office of the defendant bonding company is in Wayne county. Suit was commenced by summons in Ionia county, and was served on the bonding company by making service thereof on the commissioner of insurance in Ingham county. Return of this summons was duly made and filed after the return day, showing that the other defendants could not be found in Ionia county. An alias summons was then taken out with an indorsement thereon to the effect that the bonding company had been duly served, and the same was served on the other defendants in Kent county. Defendants thereupon appeared specially and moved to dismiss the suit, alleging a want of jurisdiction in the court. Subsequently, a plea in abatement was filed for the same purpose, but both motion and plea were

overruled. Davarn and Hosley filed a plea to the merits, and defendants Gould and the bonding company were defaulted for want of appearance. The point made is, that the service on the bonding company was invalid, and therefore was insufficient upon which to base service of the other defendants in Kent county. Act No. 266, Pub. Acts 1895, as amended by Act No. 321, Pub. Acts 1907 (3 Comp. Laws 1915, § 12340, note), is the law authorizing surety companies to do business in this State. The proviso added by Act No. 321 provides:

"That suits may be commenced in the circuit court in any county where the plaintiff resides, by declaration or writ, and service shall be made in such cases only upon the commissioner of insurance in like manner and with like effect as is provided for the service of process upon societies, orders or associations organized under the laws of any other State, province or territory and doing business in this State, and not having its principal office within this State, and for the purpose of service of process as herein provided such surety company shall appoint in writing the commissioner of insurance, or his successors in office, to be its true and lawful attorney."

If this proviso is valid, it authorized the plaintiff to commence suit in Ionia county where she resided. In considering the purpose of this proviso in *People* v. *Fidelity & Deposit Co.*, 163 Mich. 94 (127 N. W. 765), Mr. Justice STONE observed that:

"It is reasonable to suppose that this refers to cases upon that class of bonds referred to in the preceding provisos. It seems to refer to service of process upon a domestic corporation, for it provides that such service shall be with 'like effect as is provided for the service of process upon societies, orders, or associations organized under the laws of any other State, province or territory, and doing business in this State,' etc. The entire purpose of the amendatory act seems to have been to provide for the execution of liquor bonds by domestic corporations, and proceedings in case of suit thereon."

Counsel argue that the legislation did not contemplate that the bonding company should be served with process in any county other than the one in which it resides, or in the county where the principal of the bond resides and does business. If such were the intention of the legislature, it was most unfortunate in the language which it chose to convey that intention. The words, "that suits may be commenced in the circuit court in any county where the plaintiff resides, etc., are not ambiguous, nor are they involved in doubt. We must hold that these words mean what they say, and that they authorized plaintiff to commence suit where she did.

But counsel further argue that if the language will admit of no other construction, then that part of the act is unconstitutional, because there is nothing in the title of the act to indicate that there was to be any change in the jurisdiction of the courts of this State. In other words, that the object of the act is not fairly expressed in its title. Counsel's point and argument thereon are answered by this court in the case of *People* v. *Fidelity & Deposit Co., supra,* where the same question was raised and passed upon adversely to defendants' contention.

2. Another question is raised in the briefs in this connection, namely, that the service of the summons on the commissioner of insurance by the sheriff of Ionia county was an invalid service. Act No. 225, § 1, Pub. Acts 1901 (3 Comp. Laws 1915, § 12430, note), points out with reasonable certainty as to how this process shall be served. If that statute is to be followed, and no other, in the making of service upon the insurance commissioner, it raises a very serious question as to the validity of the service made. Our attention, however, is called to the fact that this point was not raised in the lower court; that it was not included in the motion to dismiss, nor in the plea, and

therefore, under the rule, we cannot consider it. We shall refrain from passing upon it, as we think plaintiff's objection is well taken.

3. Error is assigned because the trial court refused to direct a verdict for defendants on the ground that Taylor's arrest and the failure to bring him forthwith before the justice was the intervention of a wrongful human agency, to which must be ascribed the proximate cause of death. Counsel argue this question at considerable length and cite many authorities defining and applying that general rule. In order to successfully apply that principle in this case, counsel are obliged to assume that Taylor was not intoxicated when he was arrested, and that his intoxication did not contribute to his death. Counsel attempt to show that as a matter of fact Taylor was not intoxicated. We cannot accept this conclusion. The testimony shows that Taylor drank at least five drinks of whisky in defendants' places, and the inferences are very strong that he drank more. Whether he was intoxicated, and, if so, to what extent, the testimony was somewhat conflicting. It was, however, a question for the jury, and the testimony was sufficient to sustain their finding. To have directed a verdict on this ground would have been to ignore the claims of plaintiff. Plaintiff claimed and offered testimony in support thereof, that defendants sold liquor to Taylor, that he was in the habit of becoming intoxicated, and he was intoxicated when arrested, and that his intoxication was responsible for the fire which afterwards caused his death. The testimony was sufficient to send all of these questions to the jury. In order to justify such a direction as was asked, the court would have been obliged to find that Taylor was not intoxicated. This he could not do under the testimony, and if he could not find that fact, the motion to direct a verdict was properly refused. The rights of defendants under this phase of the case

were amply protected by the charge of the court, that if Taylor was not intoxicated, or if intoxicated, and such intoxication did not cause nor contribute to his death, the plaintiff could not recover.

4. The defendants requested the submission of the following special question to the jury:

"Was the plaintiff's husband, Benjamin Taylor, intoxicated at the time he came to his death on the 1st day of April, 1913?"

This request was complied with and the question was submitted with the usual instruction. After the jury had considered their verdict for several hours, they returned into court and requested further instructions with reference to the special question. The trial court then said to them:

"As you will recall from the instructions I gave you, in order to find for the plaintiff you must find that her husband, Benjamin Taylor, was intoxicated at the time he came to his death. So if you find for the plaintiff your answer to the question would be 'Yes.' If you should find for the defendant you would find that he was not intoxicated at the time he came to his death, and your answer therefore would be 'No.' * * *

"*A Juror:* Nothing difficult, but if it has to be signed all 'Yes' or all 'No.'

"*The Court:* Yes; all 'Yes' or all 'No.' If he was not intoxicated at the time he met his death the plaintiff cannot recover, as I told you. If he was intoxicated at the time he met his death the plaintiff may recover, the other conditions existing to which your attention was called in the general charge. If you should find for the plaintiff it would not be a difficult thing to find the necessary elements to entitle her to recover, namely, he was intoxicated, because, if you do not find he was intoxicated, your verdict cannot be for the plaintiff. If you should find he was not intoxicated at the time of his death, your verdict necessarily must be for the defendant. You may take the paper and retire to your jury room."

The jury were later called back and further instructed that:

"*The Court:* Gentlemen, in the instructions I gave you a few moments ago relative to this special question I think perhaps I did not fully explain to you that there was another element in the case which should be considered in answering that question.

"As I said to you in substance, that if you find for the plaintiff you must necessarily answer the question as to her husband's intoxication 'Yes.' Now, on the other hand, if you should find for the defendants there are two elements that enter into the question. I instructed you, you will remember, that there were four elements necessary for the plaintiff to prove by a preponderance of evidence to entitle her to a verdict:

"*First:* The sales of liquor to her husband by the defendants, or one of them.

"*Second:* The habit of her husband of becoming intoxicated.

"*Third:* His intoxication at the time of his death.

"*Fourth:* That that intoxication contributed to his death.

"So in answering the questions, if you should find for the defendants, whether you should answer it 'Yes' or 'No' would be immaterial. If you should find that he was not intoxicated at the time of his death, your verdict then must necessarily be for the defendants. Still, if you should find that he was intoxicated, but that the intoxication did not contribute to his death, your verdict for the defendants would be justified under the instructions I have previously given you, and it is to correct the possibility of a misunderstanding of what I said a few moments ago I recalled you upon that point.

"If the plaintiff recovers, the answer must be 'Yes' in any event. If the defendants recover, the answer may be 'Yes' if you should find that the intoxication did not contribute to his death, or 'No' if you should find he was not intoxicated at all. Both elements are involved."

The objections raised to these instructions are that the tendency of them was to coerce a verdict, and be-

cause it instructed them what answer to make to the
special question to make it consistent with their gen-
eral verdict. We are of the opinion that the error is
well assigned under the holdings of this court in the
cases of *Cole* v. *Boyd,* 47 Mich. 98 (10 N. W. 124) ;
*Maclean* v. *Scripps,* 52 Mich. 214 (17 N. W. 815, 18
N. W. 209) ; *Beecher* v. *Galvin,* 71 Mich. 391 (39 N. W.
469) ; *Mechanics' Bank* v. *Barnes,* 86 Mich. 632 (49
N. W. 475) ; *Brassel* v. *Railway Co.,* 101 Mich. 5 (59
N. W. 426).

It was said in *Maclean* v. *Scripps, supra,* that:

"The object of the statute (Comp. Laws 1871, §
6026; How. Ann. St. 1882, § 7606) requiring the jury
to answer specifically questions giving their conclusions
on the facts necessary to be found to entitle a party to
recover, was to ascertain whether or not they had found
sufficient facts from the evidence to support their gen-
eral verdict under the law as given them by the court.
It is the province of the jury to find these facts from
the evidence, without aid or suggestion from the court,
and this can never be done if the jury are told in ad-
vance what facts are necessary to be found to support
the verdict, or what answers to the questions pro-
pounded will be consistent therewith, or what they
must find in order to answer a question propounded in
the negative or affirmative. This practice will make
the general verdict control the findings, instead of the
findings control the general verdict; and thereby the
object of the framers of the statute will be defeated.
This was the result of the practice indulged in this
case. The effect is to make the court, and not the
jury, decide the main issues in the case. *Cole* v. *Boyd,*
47 Mich. 98 [10 N. W. 124]. The special findings of
the jury were sufficient to support the general verdict,
had the proceedings upon which they were based not
been erroneous."

The question submitted in this case was an import-
ant one. The question as to whether Taylor was in-
toxicated at the time of his death was the pith of plain-
tiff's case. Unless plaintiff was able to establish that
fact, the jury were instructed that no recovery could

be had. In view of the importance of the question, the instruction that their answer to the special question must be in harmony with their general verdict, and advising them what their answer should be under certain circumstances, was clearly error because it violated the rule laid down in the foregoing cases. We have not overlooked the case of *People* v. *Murray*, 52 Mich. 288, 291 (17 N. W. 843). In that case, however, the language of the trial court was construed to have reference to their general verdict. Evidently it was not intended by what was there said to overrule what had previously been said in *Cole* v. *Boyd, supra.* We are of the opinion that the purpose of the statute will be better conserved by following the cases cited.

For this error the judgment must be reversed, and a new trial granted.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.