YINGER *v.* SECORD.

JURY—COERCION.

    Verdict of jury in action which arose from collision between westbound, left-turning plaintiff's car and defendant's eastbound car at 10 p.m. late in September *held,* to have been coerced at close of second day of deliberations, where trial judge, who had advised them he had to be in another county in his circuit the following morning, ascertained at 10:55 p.m. that the vote stood at 9 to 3, some 10 minutes later at 10 to 2, and then required the jury to deliberate longer in view of the change in tally; at 11:55 jury returned to courtroom for repetition of certain instructions, at 12:20 a.m. presented their verdict for defendant but answered special question on a 10-to-2 vote; the trial judge ordered jury to reconsider answers to special questions, and 10 minutes later the jury answered unanimously for defendant.

Appeal from Branch; Andrews (Mark S.), J. Submitted January 21, 1962. (Calendar No. 76, Docket No. 48,803.) Decided February 7, 1963.

Case by Melba Yinger against Keith Secord for personal injuries suffered in automobile collision. Verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

*Dimmers, MacRitchie & Moes* (*Albert W. Dimmers* and *Clay T. Brockman,* of counsel), for plaintiff.

*Richard F. Biringer,* for defendant.

---

REFERENCES FOR POINTS IN HEADNOTES

53 Am Jur, Trial §§ 950–964.
Coercive effect of verdict-urging by judge in civil case.   19 ALR2d 1257.

OTIS M. SMITH, J.  Appeal is taken from an order denying motion for a new trial in this automobile accident case.  A jury verdict was returned in favor of defendant and judgment entered accordingly.

Proceeding in her car westerly on US–112, a 2-lane highway, in the city of Coldwater at approximately 10 p.m. on September 22, 1958, plaintiff, Melba Yinger, decelerated her car to a minimal speed and started to make a left turn into a private drive. When her car had advanced approximately halfway into the eastbound lane of the highway, a collision occurred between cars driven by plaintiff and defendant.  Defendant was traveling in the opposite direction.  Defendant testified that he observed plaintiff's car slowing down and assumed that its driver would stop and wait for him to pass. He says that she suddenly turned in front of him and that, therefore, he was unable to avoid the collision. Defendant's negligence allegedly consisted of driving his car at such a reckless and excessive speed that he could not stop within the assured cleared distance ahead.*

Of the several grounds urged by appellant for reversal, 1 requires discussion.  It concerns actions of the trial judge in the evening and night of the second day's deliberations by the jury.  The jury retired for deliberations at 2:30 p. m. on February 23, 1960, and continued for the balance of that day. The jury resumed deliberations on the morning of the next day and, except for time out for lunch, was confined to the jury room the entire day.  At or about 5:30 p.m. on this, the second, day of deliberations, the trial judge called the members of the jury into the courtroom and advised them that his calendar required him to be in another county in his circuit on the following morning.  He asked, there-

---

* See CLS 1956, § 257.627, as amended by PA 1957, No 190 (Stat Ann 1957 Cum Supp § 9.2327).—REPORTER.

fore, the jury to continue their quest for a verdict after the evening meal. At 10:55 p.m. the jury was summoned to the courtroom and the foreman was asked if he felt there was any possibility that the jury could arrive at a verdict. He replied, "I doubt it." The judge then asked the foreman what was the present jury vote. In this connection the foreman was advised that he was not to disclose whether the vote was in favor of plaintiff or defendant. The foreman advised the judge that the vote stood at 9 to 3, and, in response to a question, indicated that it had changed twice since the evening meal. The judge then advised the jury as follows: "Well you go back and take 1 vote, then come back and report and I will decide what to do." At 11:05 p.m. the jury returned to the courtroom. The foreman was asked how the vote stood at that time. He replied, "10 to 2." The colloquy between the court and the jury foreman was then as follows:

"*The Court:* Do you feel that that is progress in view of your deliberations you have had heretofore?

"*The Foreman:* Well I don't know.

"*The Court:* Well if there is something I can say to you that might be of help I am perfectly willing to do it.

"*The Foreman:* Well if we could hear the testimony of the plaintiff and defendant it might help.

"*The Court:* Well the difficulty with that is it would be improper to hear a portion of the testimony of any witness, or the testimony of any witness, to the exclusion of other witnesses, because you must consider all of the testimony of all of the witnesses in determining the questions of fact which have to be decided. Even if I should ask the reporter, which of necessity would require considerable time, to transcribe the testimony of those 2 witnesses, there is other testimony which bears on their testimony and you would have recalled to your recollection a part of the testimony of a witness, or witnesses,

and not have the testimony of all of the witnesses recalled to your recollection. Under our method of trial it is the jury's function to recall the testimony as they heard it, and if I were to give you all the testimony it would be quite an undertaking. I am afraid, with this handicap, your request is such that it cannot be granted. Is there anything else I can say that might be helpful to you as to the law?

"*The Foreman:* Whether or not you said a juror should surrender his honest conviction to reach a verdict?

"*The Court:* No, I did not say that. I said, on several occasions, that the verdict must be the conscientious verdict of each juror. If you cannot conscientiously agree then there is a disagreement. I also said, however, that a minority—and it is obvious from what you say there is a minority—they ought to give serious consideration as to whether the facts which the minority holds are the result of careful conscientious consideration of the evidence in view of the fact, inasmuch as they do constitute a minority view. But you must not be misled by my statement to presume that there is anything wrong with the minority view. If the minority is firmly convinced that they are right, then they have a right to continue to believe that.

"*The Foreman:* That seems to be the situation, Your Honor.

"*The Court: Well, you changed 1, at least there has been 1 change. The majority has increased by 1.* (Emphasis supplied.) Because of the time this case has taken to try, and because of the expense involved—these people have a right to have this lawsuit decided—and I have already mentioned, upon a retrial there is no reason to expect that the 12 people in the box will be any more qualified than those of you who are now here, there is no reason to expect that the evidence will be any clearer than it has been in this case, and if you can possibly come to a decision, considering everything that I have said thus far, the litigants have a right to ask you to decide

the case. If you can, that ends it. I want to be entirely sure that you cannot before I discharge you. *In view of the fact that the tally is 1 different than it was when you came in a few minutes ago, I think there may be a possibility and I will have to ask you to go back and deliberate for a little longer. You may retire."* (Emphasis supplied.)

At 11:55 p. m. the jury returned to the courtroom. At this point, the court, apparently upon request, read again the instruction regarding procedure to be used in answering special questions which had been submitted. The jury was then asked to retire and resume deliberations. At 12:20 a. m., the date now being February 25th, the jury returned to the courtroom to render its verdict. The foreman advised the court that the jury had found for the defendant, after which the following colloquy ensued:

"*The Clerk:* Have you answered the 3 special questions?

"*The Foreman:* Yes.

"*The Clerk:* Will you please read the first special question and answer?

"*The Foreman:* 'Was plaintiff injured as a result of any negligence on her part?' The answer: 10 yes, 2 no.

"*The Court:* They are not all answered the same way?

"*The Foreman:* No.

"*The Court:* The question must be answered all the same way. Do I understand that you are in disagreement as to the answers to question No 1?

"*The Foreman:* Yes.

"*The Court:* I apparently did not make myself plain. With respect to the special questions they must all be answered alike. If they are not all answered alike it constitutes a disagreement. I am quite sure I made that statement earlier today. Do you feel it is possible, Mr. Foreman, to come to an

agreement as to the answers to the special questions?

"*The Foreman:* I do.

"*The Court:* All right, you may retire then and *reconsider your answers to the special questions.*" (Emphasis supplied.)

The jury returned in about 10 minutes and the foreman advised the court that the jury had answered the 3 special questions, all in favor of defendant, this time 12 to 0.

Appellant strongly urges that the foregoing portions of the record indicate that the trial judge coerced the jury's verdict. It is difficult to avoid this conclusion even though it must be noted that, in the main, the conduct of the trial was unassailable. This Court has often indicated its reluctance to upset a jury verdict, and we do so only when error is so prejudicial that it amounts to a miscarriage of justice. First we must assume that members of the jury having deliberated all day, save at mealtime, must have begun to experience fatigue in the eleventh hour of the day. The circumstances disclose that members in the minority on the jury were forced to deliberate in an atmosphere of undue pressure, possibly at the expense of their own personal convictions. Merely to be in a minority position, stubbornly holding out for what one considers right, must be a difficult position to maintain as the hour grows later, and the judge's need to be in the next county by morning seems to loom in large proportion. Then as physical endurance must be nearing an end, it is revealed that the majority may try, once again, as the hour grows even later, to win the consent of the minority. A verdict is returned and then the problem with the special questions arises. We are asked to speculate that this may have been a mere mistake in tabulation. This is certainly possible. It is also possible that this was the last clear evidence of what the jury minority maintained as their per-

sonal verdicts, that is, that appellant was not guilty of contributory negligence. We cannot sanction this procedure.

This case is comparable to *Peavy* v. *Clemons,* 10 Ga App 507 (73 SE 756). After ascertaining that the jury vote stood 10 to 2, whereas it previously had been 7 to 5, the trial judge remarked, "That it is encouraging. You seem to be making progress towards a conclusion of the case, and I am glad that you are." In remanding the case for new trial, the Georgia court cited 2 prejudicial effects of such a comment. Not only does it tend to impress the jury that the court approves the conduct of those jurors who leave the minority to join the majority, but it also discourages the dissenting jurors in holding to their conviction as to what is really the truth as they view evidence in the case. Although in the instant case, the trial judge reminded the jurors that they had a duty to stick by their convictions, it is difficult to see how the pressure of having to wind up the case at such a late hour when fatigue must have set in, can erase the conclusion that the verdict was coerced. Under the circumstances we are obliged to order a new trial.

Reversed and remanded for a new trial. Costs to appellant.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAV-ANAGH, and SOURIS, JJ., concurred with OTIS M. SMITH, J.

BLACK, J. (*concurring in reversal*). I agree with Justice OTIS M. SMITH's analysis of the case and the conclusions reached by him. Specifically, I would reverse on account of jury instruction as follows:

"*The Court:* I apparently did not make myself plain. With respect to the special questions they must all be answered alike. If they are not all

answered alike it constitutes a disagreement. I am quite sure I made that statement earlier today. Do you feel it is possible, Mr. Foreman, to come to an agreement as to the answers to the special questions?"

This was patent error. For elucidation, see *Cole v. Boyd,* 47 Mich 98; *Maclean* v. *Scripps,* 52 Mich 214; *Mechanics' Bank of Detroit* v. *Barnes,* 86 Mich 632; *Taylor* v. *Davarn,* 191 Mich 243; and *Tober* v. *Pere Marquette R. Co.,* 210 Mich 129. When and if special questions are framed properly for the presented issues of fact and are duly submitted to the jury for answer, the jury should be left free to answer such questions according to its view of the facts and should not be instructed that all questions must be answered "alike" on penalty of "disagreement."

A mistrial may of course result from conflicting answers. But that is a matter for judicially exclusive determination after the jury has returned its general verdict, has handed in its uninfluenced answers to the special questions, and has been discharged from duty to the case.

The results reported to the court by the jury were begotten of reversible error and unintentional yet prejudicial coercion. Plaintiff on that account is entitled to an order for retrial.

O'HARA, J., took no part in the decision of this case.