# OCTOBER TERM, 1883.

LUTHER BEECHER v. DENNIS GALVIN ET AL.

71 391
90 54
71 391
j144 ²434

*Ejectment—Boundary lines—Evidence—Opinions and conclusions of witness—Adverse possession—Special questions to jury—Charge of court.*

1. The suppositions of a witness as to the location of a disputed division line are incompetent testimony, as are his conclusions that land-owners had acquiesced in such location.
2. There are other ways of holding possession of land besides inclosing it by a fence.[1]
3. The object of the statute in allowing special questions to be submitted to the jury, and requiring answers thereto, is to ascertain whether the jury, in making up their verdict, have properly applied the law, as given by the court, to the facts in the case; and it is error to direct what answer shall be made, in the event the general verdict is a certain way.[2]

Error to Wayne. (Brevoort, J.) Argued April 13, 1888. Decided October 5, 1888.

Ejectment. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Henry M. Cheever,* for appellant.

*Dickinson, Thurber & Hosmer,* for defendants.

SHERWOOD, C. J. This suit was an action of ejectment by the plaintiff, who owns property on the Lognon farm, against the defendants, who own property on the Wood-

---

[1] See *Cook v. Clinton,* 64 Mich. 310 (head-note 2); *Murray v. Hudson,* 65 Id. 670.

[2] See Act No. 15, Laws of 1885, as to form of questions, etc.

bridge farm, adjoining on the east. The Galvins were the owners, and Hickey was their tenant, occupying the strip of land in dispute, the same being a parcel 12 feet in width and about 130 feet in length, lying in the city of Detroit. The declaration was in the usual form, and the plea the general issue.

The plaintiff claims the strip was a part of the Lognon farm, and the defendants insist it was a part of the Woodbridge farm. The plaintiff also .claimed that the defendants had moved their west fence from the dividing line between the two farms over on the Lognon farm at some time less than the period of 15 years before the plaintiff brought his suit.

Upon the trial the plaintiff claimed to hold by adverse possession, under claim of title, and an acquiescence on the part of defendants and those under whom they claim. It was claimed by him that a certain fence east of the ditch on· said land was the line, as established by them, and the acquiescence of the parties and their grantors. On the contrary, the defendants insisted that the center of said ditch was the division line between the parties' parcels of land.

The suit was commenced November 25, 1879, and the trial of the cause was closed on November 20, 1887, and the defendants prevailed. The plaintiff brings error. The record shows that the cause has been tried five times.

The question presented upon this trial was one of possession entirely as it went to the jury, and whether such possession was adverse in the plaintiff.

J. Wilkie Moore was called to the stand by the plaintiff, and gave testimony in answer to plaintiff's questions that he was 73 years old, and had known the premises about 50 years, and knew the Lognon farm, and knew of Lognon and the Spechts when they occupied the farm, and

knew Gov. Woodbridge when he lived on his farm, and saw the old fence between the two farms as early as 1835 or 1836; that the Spechts then claimed to own the Lognon farm, and occupied it as far east as the fence; and from the time he first knew the premises the Lognons and the Spechts occupied up to the fence, down to the time Beecher bought. On cross-examination by defendants' counsel, he said he also knew of the ditch; that it was from five to seven feet wide; that it was there when he first knew the premises; that he recollected talking with Gov. Woodbridge about the lines of the farms; that the ditch was on the west side of the fence; that there were three lines,—that is, there was a fence, a ditch, and a row of trees. Counsel then put the following question:

"What will you say as to the ditch being the dividing line of occupation between the two farms?"

This was objected to by plaintiff's counsel as incompetent, and because—

"It is not pretended that the witness has any knowledge of any survey or anything to show where the dividing line was."

The objection was overruled, and the witness was allowed to answer:

"I supposed the ditch was a line; yet at the same time there was the fence, and the ditch, and the row of trees about five feet on Woodbridge lot, and the ditch the other way. I don't know as this is proper, but I supposed the ditch was on the line, and the fence was put over."

Witness was then asked by counsel for the defendants the following question:

"You say the ditch was the line. It was generally supposed the ditch was the line, was it not?"

This was objected to as—

"Incompetent under the theory of the plaintiff's case as we have outlined it. It is immaterial where the line

is. The question is whether they occupied up to the fence."

The objection was overruled, and the witness answered (the question being repeated in substance), "I think it was."

This testimony was incompetent. What the witness supposed was generally understood, or what he supposed or thought in the matter, was clearly inadmissible, and especially as it is quite apparent from all his testimony he knew nothing of the line whatever. This witness' age and long acquaintance with the premises gave an importance before the jury to his testimony, which, in this particular instance, was entirely misleading, and undoubtedly prejudicial to the plaintiff's case, if he had any, and the objections should have been sustained.

The following question, put to William Woodbridge was clearly objectionable as calling for a conclusion, of a most mischievous tendency, viz.:

"What can you say as to the ditch being acquiesced in as the dividing line between the farms by the respective parties in interest? What can you say of the ditch being acquiesced in as the dividing line between the Woodbridge farm and the Lognon farm at the time the land was possessed by the Spechts,—Ferdinand, Victor, and Louis?"

Witness answered:

"Well, sir, it was tacitly consented to by all parties that the center of that ditch was the dividing line, for nobody ever obstructed it at all in any way. They never put up any fence down in the ditch."

All the questions relating to the subject of acquiescence put to this witness were objectionable on the ground stated, and the testimony was erroneously admitted. We find no other rulings of the court so far objectionable as to make a reversal necessary to correct them. Seven rulings of the court, relating to the charge and the requests to charge, remain to be considered.

In regard to plaintiff's first request, it was not a case where the court should have directed a verdict for the jury, and the court did not err in declining so to do.

The defendants, in their fifth request, asked the court to charge the jury as follows :

"If you believe the testimony of the Fitzpatricks, that the fence along the Galvin lot, along the Woodbridge orchard, was removed prior to the summer of 1864, then there can be no claim of adverse possession on the part of Luther Beecher alone, and defendants are entitled to a verdict."

The giving of this request was properly excepted to. It assumes that, unless land adversely occupied is inclosed by a fence, such possession and occupancy cannot ripen into a title by the lapse of time. Such, however, is not the law; there are other ways of holding possession of land besides inclosing it by a fence.

We see no objection to the other requests of defendants' counsel given by the court.

The plaintiff's counsel made request of the court to submit to the jury, to be answered specifically, the following questions:

"1. Did not the Lognons, the Spechts, and Beecher, during their respective occupancy of the Lognon farm, occupy the same, each under a claim of title, openly, exclusively, adversely, notoriously, and hostile to any other person, up to the old farm fence; and did not each of them, respectively, acquiesce in that fence as the dividing line between the farms; and did not Gov. Woodbridge, during his occupancy of the Woodbridge farm, also thus occupy to the fence, and acquiesce in it as the dividing line?

"2. Had not the old farm fence stood for many years along the west side of the Galvin lot, some five or six feet east of the place where the fence now stands, on the west side of said farm lot?

"3. Was not this old farm fence along the west side of the Galvin lot moved by John Galvin and others for the defendants, in the summer of 1865, five or six feet further

west, and to the place it now occupies; and was not such removal less than 15 years before November 25, 1879, which was the date of the commencement of this suit?

"4. Had not the occupation of the Spechts, the Lognons, and Beecher been continuous for more than twenty years before the Galvins removed the fence in the summer of 1865?"

The court declined to submit the fourth question at all, and submitted the first, second, and third, with the following instructions:

" Now, gentlemen, if your verdict should be for the plaintiff, then I direct you to answer the first three questions submitted by plaintiff's counsel,—Nos. 1, 2, and 3. If you find against the plaintiff, then you want to designate your verdict on the special questions in accordance with the queries submitted."

We see no reason why these questions should not have been submitted; and it was not proper for the court to tell the jury what answers they should give to the questions, or either of them. The object of the statute in allowing such specific questions to be submitted to the jury, and requiring them to make answer thereto, was to ascertain whether the jury had, in making up their general verdict, properly applied the law, as given by the court, to the facts in the case. This can never be done if the jury are to be directed by the court what answer shall be made to each question asked, in the event the general verdict is a certain way. This direction by the court was error, and it was also error for the court to decline to require the jury to make answer to the plaintiff's questions so submitted when asked to do so by plaintiff's counsel.

The following questions were submitted for specific answers by the jury by defendants' counsel, and were returned by the jury, answered as follows:

"1. Is not the land in dispute on the Woodbridge farm?

"*A.*   Yes.

"2.  Was not the center of the ditch acquiesced in by all the Spechts, and Lognons, and Woodbridge, as the dividing line?

"*A.*   Yes.

"3.  Have not the heirs of Governor Woodbridge, and the Galvins, occupied this land since the summer of 1864, and maintained an adverse possession?

"*A.*   Yes.

"4.  Did Mr. Beecher ever claim any title to this strip until the commencement of this suit in 1879?

"*A.*   No.

"5.  Has not the Galvin fence stood where it now is since 1865?

"*A.*.   Yes."

There was the same error committed by the court in telling the jury what answers to make, if the general verdict was in favor of one or the other of the parties.[1]

Some objection was made to the submission of these questions and answers given, but we see no objection to them, and but for the errors pointed out they would have been conclusive of the case in favor of defendants.

The judgment must be reversed, and a new trial granted.

CHAMPLIN, MORSE, and LONG, JJ., concurred.  CAMPBELL, J., did not sit.

[1] The instruction was as follows: "If you find for the defendants, you are to answer those questions in the manner which the questions call for,—favorably, of course, to the defendants."