OSCAR JOHNSON v. THEO. HAMM BREWING COMPANY
AND ANOTHER.
GERALDINE GLADYS JOHNSON v. SAME.[1]

June 19, 1942.

No. 33,238.

[1]Reported in 4 N. W. (2d) 778.

*A. E. Parsons* and *Paul C. Cooper,* for appellants.
*Bundlie, Kelley & Finley,* for respondents.

GALLAGHER, CHIEF JUSTICE.

On September 21, 1940, Geraldine Gladys Johnson, nine years of age, was injured when a bar or counter, situated in a building previously used for the business of selling beer and soft drinks, fell upon her as she was climbing on it. On the theory that defendants were the owners and in possession of the building and that their negligence had caused the accident, an action was instituted against them by plaintiff Oscar Johnson, father of Geraldine, for the recovery of medical expenses incurred by reason of the injuries suffered by his daughter at the time of the accident. A second action was instituted in behalf of the child by the father to recover damages for disability, pain, and suffering. The two actions were consolidated for trial in the district court. After considerable testimony had been adduced in behalf of plaintiffs but before they had rested, the trial court granted a motion for dismissal as to defendant Theo. Hamm Brewing Company on the ground that it then appeared that at the time of the accident this defendant was not the owner and was not in possession of the premises involved. Plaintiffs' case having been presented to the court and jury, defendant United Properties, Inc. rested without

introducing any evidence. Its motion for a directed verdict was granted. Each plaintiff moved for a new trial, and, the motions having been denied, each appeals. We consider the cases as one.

The most important question raised by the assignments of error is whether the trial court properly directed a verdict for defendant United Properties, Inc. The action of the trial court having been premised on the ground that plaintiffs had failed to establish actionable negligence on the part of that defendant, we consider the evidence relevant to this issue in the light most favorable to plaintiffs.

The building in which the accident occurred is located on a lot in the business district of the village of Monterey. Prior to December 31, 1937, it was owned by defendant Theo. Hamm Brewing Company. There was introduced in evidence a quitclaim deed whereby the brewing company conveyed the property to United Properties, Inc. On its face the deed appears to have been signed and acknowledged on December 31, 1937. It was filed for record on March 10, 1941, and the revenue stamps appear to have been cancelled on March 8 of that year. In 1933, one Anton H. Meidl entered into possession of the building, paying, by checks made payable to the brewing company, a rental of $20 a month in advance on the first day of each month. He conducted therein a pool hall and sold beer, soft drinks, and related merchandise. Having erected a building on the lot adjacent to the one he had been renting, Meidl sent a letter dated July 31, 1940, to the brewing company in which he stated that "my new building will be completed by about the 10th or 15th of September and  *  *  *  I then will vacate your building here and move into my own." He began to move into his new place of business on or about September 4, 1940. At that time the bar or counter which caused injury to Geraldine and which was owned by Meidl was fastened to the floor of the old building with iron brackets and screws. At the time of the accident these brackets and screws had been removed. From the evidence it does not appear with certainty who removed them, but Meidl testified that prior to the accident

a carpenter employed by him had been working in the building and that he had ordered the local drayman to remove this bar therefrom.

At the time of the accident Meidl had the key to the leased property in his possession. He had not been given any notice to quit. In addition to the bar, a stove and two booths owned by him had been left in defendants' building.

It appears that children had gained entrance to the building on several occasions subsequent to September 4, and on the morning of September 21 there were several young boys and girls playing in it. There is no direct evidence as to how they or those there previously had entered. Meidl stated that he had been in the building only once between September 4 and the date of the accident; that upon leaving he had locked the front and back doors; that these were the only entrances to the building except one on the side which had been blocked by his newly erected structure. However, there is considerable evidence to the effect that, while the front door functioned properly, the back door sagged so that it could be locked only by prying it up from the sill with a bar. There is also testimony showing that there was a screen door at this entranceway which could be latched from the inside.

On the day of the accident, Geraldine and her playmate Charlene McClagen were playing on the street in front of the leased premises. Looking into the building, they saw the children who had gained entrance. Invited to join them, Geraldine and Charlene entered the building through the front door without difficulty. After a few minutes, Geraldine walked to the bar, placed her hands on the edge of its surface, and fixed her feet on a part which projected from its outer side near the floor. While she was in this position, the bar fell on her and injured her, the device by which it had been affixed to the floor having been removed.

Plaintiffs argue that they have established a basis for a finding of negligence because, according to their view, the evidence was such as reasonably to justify a jury in concluding that the rear

door of the building was defective and could not be closed, and that, knowing or having reason to know of this situation and the additional fact that children had entered the building before the date of the accident, one or both of the defendants had permitted the bar "to exist upon the premises unguarded and unprotected" after the brackets and screws had been removed.

■ Whether defendant United Properties, Inc. (hereinafter referred to as defendant) was negligent in the respects mentioned depends in a large measure upon its status with respect to the premises at the time of the injury. Plaintiffs claim that defendant had possession of the building, while the latter argues that it was merely a lessor and that Meidl was in possession. Occupying the premises under an oral lease without any agreement as to the length of the term and paying rent the first day of each month, Meidl was a tenant from month to month. Johnson v. Albertson, 51 Minn. 333, 53 N. W. 642, and cases cited in 4 Dunnell, Dig. § 5375, note 79. Neither the lessor nor the lessee can terminate such a tenancy, absent agreement so to do, except by one month's notice directed to the end of the month. Finch v. Moore, 50 Minn. 116, 52 N. W. 384; Grace v. Michaud, 50 Minn. 139, 52 N. W. 390; Van Brunt v. Wallace, 88 Minn. 116, 92 N. W. 521; Hunter v. Frost, 47 Minn. 1, 49 N. W. 327; Eastman v. Vetter, 57 Minn. 164, 58 N. W. 989; Alworth v. Gordon, 81 Minn. 445, 84 N. W. 454; Waggoner v. Preston, 83 Minn. 336, 86 N. W. 335; 4 Dunnell, Dig. & Supp. §§ 5440, 5441, 5443, and 5444. It is clear that no notice to quit was ever given to Meidl by defendant. If the notice which Meidl sent to the brewing company be construed as a sufficiently formal notice of his intention to quit the premises, it was not effective to terminate the tenancy before the end of September. It cannot be said that this notice served to terminate the tenancy at the end of August, because in his letter to the brewing company Meidl said that his building would be completed on or about the 10th or 15th of September and that he would vacate the leased premises and move into his own when it was completed.

It is of course true that defendant could have waived its right to a notice from the lessee of his intention to quit the premises and could have accepted a return of possession from Meidl. Minneapolis E. L. Co. v. Federal Holding Co. 175 Minn. 421, 221 N. W. 645. But there is nothing in the evidence to support the theory that it did so. On the contrary, it appears that Meidl was engaged in business in the building until September 4. He retained in his possession or in the possession of his agents the only key to the building until after the accident had occurred. And on the date of the injury he was using the building to house personal property belonging to him, including the bar or counter which caused the injury to Geraldine. It does not appear that defendant or anyone who might conceivably be regarded as its agent had ever entered the premises during the month of September or had in any way exercised any dominion or control over the building. So far as the evidence shows, there was no property in the building belonging to defendant. As we have seen, Meidl had instructed a carpenter and a local drayman to go onto the premises and remove the personal property belonging to him. He apparently regarded himself as responsible for the building, because he testified that on one occasion he had "chased" children from it.

Appellants suggest that the tenancy was terminated because the evidence shows that no rent was received by defendant from Meidl after September 1, 1940. We need not decide whether waiver of a rent payment would be equivalent to accepting possession of the premises, because from the evidence it appears that the rent was payable on the first day of each month in advance, and there is nothing in the record to show whether or not payment for the month of September was made on rather than after September 1.

Appellants refer to Gibbons v. Yunker, 142 Minn. 99, 170 N. W. 917, where the court said: "A tenant who leaves the premises without intention of returning, * * * abandons the premises, though he may not have actually removed his property therefrom."

18

Conceding this to be the law, there is nothing in the evidence before us to show that at the time of the accident Meidl had left the premises owned by defendant with the intention of not returning to them. Instead it appears that he and his agents had frequently used the building after September 4, 1940, and that on September 21 he had definite intentions of removing the bar and other personal property located in the building.

■ It is the general rule that where a lease is silent with respect to the duty of making repairs the lessor is not subject to liability for bodily harm caused to persons upon the leased premises by any dangerous condition which comes into existence after the lessee has taken possession. See Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407, and cases cited; 4 Dunnell, Dig. & Supp. § 5369, and cases cited in note 39; Restatement, Torts, § 355. An exception is sometimes made where the lessor has agreed to keep the premises in repair or where he has negligently attempted to make repairs. Restatement, Torts, §§ 357 and 362; 4 Dunnell, Dig. & Supp. § 5369, and cases in notes 40, 49; 49 A. L. R. 1418. Neither of these exceptions has any application in this case. Cf. Wood v. Prudential Ins. Co. 212 Minn. 551, 4 N. W. (2d) 617.

Even though it be assumed that the injury to Geraldine resulted from leaving the bar or counter in the leased building at a time when it was not securely attached to the floor, and that permitting it to remain there in that condition was, under the circumstances, negligence, defendant could not be held legally responsible for the accident on this account, for the reason that it appears clearly from the evidence that the bar, which was in the building when Meidl took possession, was purchased by him, and that the brackets and screws with which it was affixed to the floor were removed between September 4 and September 21 by someone other than defendant. Hence, if the premises were made dangerous in this respect, the dangerous condition came into existence after the lessee took possession.

We have been referred to Isham v. Broderick, 89 Minn. 397, 95 N. W. 224, which held that the owner of a leased building was liable to a person injured when he slipped upon ice on the sidewalk in front of it, formed from water which had drained from the roof of the structure through pipes affixed to the house prior to the time of the lease. This is in accord with the rule of Restatement, Torts, expressed as follows in § 379:

"A lessor of land who transfers the possession thereof in a condition which he realizes or should realize as involving unreasonable risk of bodily harm to others outside the land, is subject to the same liability for bodily harm subsequently caused to them thereby as though he had remained in possession."

Plaintiffs claim that the rule of the Isham case is applicable here. From its statement of facts it appears to be distinguishable on the ground that the injury there was caused to a person who was not on the leased premises at the time of the accident. But, apart from this distinction and even though it be assumed that this is a case where the lessor could be held liable for injury to a person upon the premises caused by defects in existence at the time of the lease, we feel that there was not sufficient evidence presented to justify the trial court in submitting the case to the jury on this ground. The only defect in the premises which plaintiffs claim existed prior to the lease relates to the rear door of the building, which was in such condition that it could not be locked unless pried up from the sill. We believe that upon the record as it now stands the jury could not find that this condition of the back door was a proximate cause of the accident. Geraldine testified that she entered the building through the front door. There were other children in the building at this time who might have released the night lock on the door from the inside, but there is no testimony showing that these children entered the building through the back door. Further, in spite of the defective condition of the door, it appears that there was a screen for this entranceway which could have been and, according to Meidl, was

latched from the inside. Although it seems that the occupant of the premises had difficulty in locking the rear door because of its condition, Meidl testified that it could be locked by pushing it up from the inside and that he had done so subsequent to September 4 and prior to September 21. In fact, he had kept the door locked in this manner during a considerable part of the time that he was engaged in business in the building and when, necessarily, he must have had property of value situated there. Finally, in this regard, the evidence does not establish that this entranceway was defective at the time of the commencement of the lease.

■ Appellants also argue that the building was, under the circumstances, an attractive nuisance. It is reasoned, in substance, that any apparently vacant building in a village such as Monterey is an attractive nuisance to children if they can enter it and play with fixtures left therein, which might fall upon and hurt them. Without entering into a discussion of the application to the facts before us of the attractive nuisance doctrine, the condition of the building which, under this theory, would make it an attractive nuisance, was caused, not by any act of defendant, but rather by acts and omissions of Meidl at a time when he was in possession of the building. Consequently no liability could attach to defendant. See Erickson v. M. St. P. & S. S. M. Ry. Co. 165 Minn. 106, 205 N. W. 889, 45 A. L. R. 473; Kohler v. W. J. Jennison Co. 128 Minn. 133, 150 N. W. 235; Keep v. Otter Tail Power Co. 201 Minn. 475, 277 N. W. 213; Mosher v. Anton G. Hanson Co. 193 Minn. 115, 258 N. W. 158.

■ We therefore feel that the evidence as adduced would not justify the trial court in submitting the case to the jury. Consequently it will not be necessary for us to enter into a discussion of appellants' claim that the trial court erred in entering a dismissal as to the brewing company.

Orders affirmed.