### MITCHELL v. PERKINS.

1. Trial—Special Questions—Instructions—General Verdict—Statutes.

Instruction by court which is given in such a way as to indicate to the jury what answer should be given to a special question if their general verdict is to be a certain way was error, since the purpose of special questions is to ascertain whether the jury has, in making up their general verdict, properly applied the law, as given by the court, to the facts in the case and the statute requires that the answers to the special questions shall control the general verdict (CL 1948, § 618.39).

References for Points in Headnotes
[1, 2] 53 Am Jur, Trial § 638.

2. SAME — ARGUMENT OF COUNSEL — INSTRUCTIONS — SPECIAL QUES-
   TIONS—GENERAL VERDICT—CONTRIBUTORY NEGLIGENCE.
   It was reversible error for the trial court to permit counsel
   for plaintiff to argue to the jury how to answer special
   questions as to plaintiff's contributory negligence if they
   returned a general verdict in favor of plaintiff and then
   follow such argument with an instruction whereby their
   general verdict would be permitted to control the answers
   to the special questions (CL 1948, § 618.39).

NORTH, C. J., and REID, J., dissenting.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted April 11, 1952. (Docket No. 63, Calendar
No. 45,388.) Decided June 27, 1952.

Case by Egbert J. Mitchell against William O.
Perkins for injuries sustained in automobile acci-
dent. Manufacturers & Merchants Indemnity Com-
pany, a corporation, intervened as party plaintiff.
Verdict and judgment for plaintiffs. Defendant ap-
peals. Reversed and new trial granted.

*George D. Stribley (R. W. Nebel,* of counsel), for
plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin,*
for intervening plaintiff.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for
defendant.

REID, J. (*dissenting*). Plaintiff Mitchell (herein-
after referred to as plaintiff) brought this suit
against the defendant to recover for personal in-
juries with resulting loss of earnings and wages and
for pain and suffering and permanent injuries and
for damages to plaintiff's automobile not subrogated
and the intervening plaintiff sues for the subrogated
damages to plaintiff's automobile. Defendant de-
nied liability and in his cross-declaration claims dam-

ages because of injuries to his person and resultant expenses for services of physician, surgeons, nurses' care, hospitalization, X-ray services, medicines, ambulance and other such similar charges, beside lost wages. The jury rendered a verdict in favor of plaintiffs and from the judgment entered thereon, defendant Perkins appeals.

About 6:15 a.m., September 20, 1948, plaintiff was proceeding westerly on a trunk line highway known as US–31, at the rate, as he testified, of 35 to 40 miles per hour. Plaintiff testified that when he reached a point 200 feet easterly of Getty street, he saw defendant's car at a point 35 or 40 feet north of US–31, going southerly 5 or 6 miles per hour, and knew that if he, plaintiff, proceeded as he was then proceeding and the other car continued as it was then going, that there would likely be a collision. Plaintiff continued his course without slackening his speed until he was about 40 feet easterly of the point where the collision occurred and seeing that the defendant's car had continued its course without stopping and had entered the intersection and knowing that a collision was imminent, plaintiff endeavored to apply his brakes and to turn his car to the left but testified that he does not know whether he succeeded in either decelerating his car or changing its course. Getty street at the point of the intersection is a dead-end street, ending up with its connection on the northerly side of US–31. US–31 is a through street at the point in question. On Getty street, about 60 feet northerly of the side line of US–31, there was a stop sign for traffic going south on Getty street. Inevitably traffic going south on Getty street was required to turn either right or left on arriving at the intersection. Under undisputed facts, defendant was clearly guilty of negligence in entering and proceeding in the intersection.

The court submitted to the jury the question of whether plaintiff was guilty of contributory negligence because he did not promptly apply his brakes or sound his horn on noting the approach of defendant's car.

To contradict plaintiff's testimony that he first saw defendant's car when it was 35 or 40 feet north of the intersection, defendant produced a witness, Kenneth Sedgwick, a stenotypist, who testified that he took the statement of plaintiff in stenotype notes and that plaintiff stated:

"*Q*. About how far would you say, in feet, * * * [he was] from the route you were traveling on?
"*A*. Oh, 7 or 8 feet."

And further,

"*Q*. When you first saw him 7 or 8 feet from the intersection, how far were you then?
"*A*. Maybe a couple of hundred feet.
"*Q*. About 200 feet east, that would be, wouldn't it?
"*A*. Yes."

Upon the giving of this testimony of witness Sedgwick, the following occurred on cross-examination by Mr. Nebel, attorney for plaintiff, to which defendant objects and on which he predicates a claim of error:

"*Q*. Who was there at the time you claimed that you—that Mr. Mitchell, the plaintiff, was interrogated?
"*Mr. Rogoski* [attorney for defendant]: I object to that as incompetent, irrelevant and immaterial.
"*The Court:* Overruled.
"*The Witness:* Well, at this time I can only say positively 3 people; the gentleman who I was with to take this statement, and Mr. Mitchell, and myself.
"*Q*. Who was the gentleman that was with you at the time the statement was taken?

"*Mr. Rogoski:* I object to that as incompetent, irrelevant and immaterial and it is an offer for an ulterior motive.

"*The Court:* I think the objection would be good except that the accuracy of the statement is questioned. You may answer.

"*The Witness:* Mr. Walter Naglekirk.

"*Mr. Nebel:* And who is Mr. Naglekirk?

"*A.* He is claims adjuster for the Triple A Insurance.

"*Mr. Rogoski:* I move for a mistrial. This was intentional and deliberate to inject insurance into the case.

"*The Court:* No, you injected it in. You called this witness and there is a question of the accuracy of the statement and the question of interest.

"*Mr. Rogoski:* He is the one who took the statement.

"*The Court:* I overrule the objection.

"*Mr. Nebel:* How do you spell the last name of the person with you?

"*The Witness:* N-a-g-l-e-k-i-r-k.

"*Q.* Where does he live?

"*A.* In North Muskegon, that is all I can say.

"*Q.* Were you employed by him to officiate, to take down what was said there that day?

"*A.* Yes.

"*Q.* You didn't ask any questions yourself?

"*A.* No.

"*Q.* What business is Mr. Naglekirk in?

"*A.* As I said, he is the claims adjuster for the Muskegon area of the Triple A Insurance Company."

Plaintiff's justification for introducing the testimony about the presence of Mr. Naglekirk, claims adjuster for the AAA Insurance Company, is that Mr. Naglekirk asked the questions and Mr. Sedgwick is shown thereby to be the servant of the defendant or at least of the defendant's insurer and therefore an interested witness.

It was permissible to show the interest of the witness Sedgwick and we find no reversible error on this account.

Defendant offered and the court submitted to the jury for their written answer, as part of their verdict, 2 typewritten questions: One, could plaintiff, after he first saw defendant's automobile approaching the intersection, by the exercise of ordinary care have prevented a collision with defendant's automobile? Two, did the failure of plaintiff to sound his horn between the time he first saw defendant's automobile approaching the intersection and the time when defendant's automobile entered the intersection amount to negligence which proximately contributed to cause the collision in which plaintiff was injured?

During the arguments of the case to the jury, the court (against the objection of defendant) permitted plaintiff's attorney to state to the jury that plaintiff requested the jury to answer both questions in the negative. The court was in error in so ruling. See *Beecher* v. *Galvin,* 71 Mich 391, and *Taylor* v. *Davarn,* 191 Mich 243, and cases therein cited. However, from *Holman* v. *Cole,* 242 Mich 402, it appears that such error is not necessarily reversible.

Question number one, in the instant case, is improper and of doubtful construction. The court and jury were not necessarily interested in a determination of what plaintiff *could* have done. The issue was whether the exercise of ordinary care on the part of plaintiff *would* have prevented the collision.

As to the second question, it is to be observed that we have no statute requiring the driver of a motor vehicle intending to claim a superior right of way through an intersection to sound his horn to warn a driver on an intersecting highway approaching the intersection. The second question is confusing to a jury, *e.g.,* the words "proximately contributed" have

an established meaning to bench and bar, but it is not to be considered that such technical meaning in absence of explanation or instruction would be fairly well known to a layman serving as juror. The court did not commit reversible error by permitting plaintiff to request the jury to vote "no" on the 2 questions.

Plaintiff had a right to expect that defendant would stop for the intersection. Plaintiff could further consider that defendant by going so slowly as 5 or 6 miles per hour, showed an intention to stop at the intersection. Under these circumstances, plaintiff could properly be found by the jury not guilty of contributory negligence for not slowing up for the intersection until plaintiff saw that defendant actually was entering the intersection, at which time (plaintiff claims) it was too late to prevent the collision. Under all the circumstances, plaintiff was not as a matter of law, guilty of contributory negligence; it was a jury question. Among other cases, see *DeVries* v. *Owens,* 295 Mich 522.

During the taking of the testimony of plaintiff's witness, Dr. Anderson, plaintiff's attorney, after reciting some of the personal history of plaintiff as to his physical condition and injuries shown to have been apparent immediately after the accident and condition and symptoms of plaintiff's condition since the accident, asked the witness:

"Could the accident complained of have produced the condition that the person then complained of, the conditions now suffered by that person?

"*A.* I think that—

"*Mr. Rogoski:* I object to that one for the reason it is too complicated.

"*The Court:* I will overrule the objection.

"*The Witness:* I think the accident was the sole cause of these conditions.

"*Mr. Rogoski:* I move the answer be stricken as invading the province of the jury. It is voluntary and not in answer to the question.

"*Mr. Nebel:* I am the only one who can object—

"*Mr. Rogoski:* I object to it as voluntary and incompetent and invading the province of the jury.

"*The Court:* I think the doctor can state his opinion, assuming the facts in the question being correct.

"*Mr. Nebel:* Could, doctor, these facts stated in this hypothetical question stated to you, could the physical condition of that person be the result of that accident complained of?

"*A.* I think it is the result.

"*Mr. Rogoski:* I move the answer be stricken.

"*The Court:* The question is 'could it be?' Answer the question.

"*A.* Yes, sir."

We consider the court correctly ruled that the question was "Could it be?" and by that ruling correctly and sufficiently gave the jury to understand that the last answer and not the answer objected to, was the answer the jury should pay attention to.

Defendant claims the damages were excessive. The trial court in his opinion summarizes testimony showing that the total for doctor and hospital bills, damages to automobile and loss of wages to date of trial, amounted to $5,535. The verdict for plaintiff was for a total of $9,323. The balance of $3,788 must therefore be for past and future pain and suffering and permanent injuries.

There was testimony from which the jury could find that the plaintiff (then 26 years of age) suffered injuries from which he will continue to have headaches for some considerable time in the future, that he will have trouble with his right arm because of the injuries to the brachial plexus there, which is probably permanent, and that the sacroiliac strain caused by the accident will probably be permanent

and that plaintiff is going to need medical care for several years; that upon going back to work about 1 year after the accident, his wages were reduced because of his decreased ability to work, from $2 per hour as a skilled mechanic to work as common laborer at $1.20 1/2 per hour.

The court properly submitted to the jury the question of personal injuries probably continuing into the future and probable future pain and suffering and medical expenses and consequent future damages. We cannot say that the part of the verdict, $3,788, remaining after deducting computable damages is excessive nor that the entire verdict is against the overwhelming weight of the evidence.

The judgment appealed from should be affirmed. Costs to plaintiff.

North, C. J., concurred in the result.

Sharpe, J. I am for reversal and a new trial for reasons hereinafter stated.

Before the cause was submitted to the jury the following special questions were presented to the jury, at the request of defendant's counsel:

"1. Could plaintiff, after he first saw defendant's automobile approaching the intersection, by the exercise of ordinary care have prevented a collision with defendant's automobile?

"2. Did the failure of plaintiff to sound his horn between the time he first saw defendant's automobile approaching the intersection and the time when defendant's automobile entered the intersection amount to negligence which proximately contributed to cause the collision in which plaintiff was injured?"

We note that no objection was made to the form of the questions. During the argument of plaintiff's counsel to the jury the following occurred:

"*Mr. Rogoski:* I object to counsel referring to any special questions in his argument as improper.

"*Mr. Nebel:* These are requests on the part of the defendant.

"*Mr. Rogoski:* It is improper for him to make any reference to them.

"*Mr. Nebel:* I certainly can. It would be highly improper of me if I didn't.

"*Mr. Rogoski:* I will ask for a ruling of the court.

"*The Court:* No. I am going to present these questions to the jury for their answer, and I believe counsel would have the right to discuss them in connection with his argument.

"*Mr. Nebel:* Thank you, your Honor.

"*Mr. Rogoski:* I take exception to his argument as improper and prejudicial. May I have an exception?

"*Mr. Nebel:* If you are going to give Mr. Mitchell something for his damages, then you will answer both of these questions 'No.'

"*Mr. Rogoski:* I take exception to counsel telling the jury how to answer the questions.

"*The Court:* He may comment on the points raised in the special questions.

"*Mr. Nebel:* The first question that will be asked for you to determine is 'Could plaintiff, after he first saw defendant's automobile approaching the intersection, by the exercise of ordinary care, have prevented a collision with defendant's automobile?' We submit if you give a verdict to plaintiff, the answer to that is 'No.'

"*Mr. Rogoski:* I object to the argument as improper and prejudicial.

"*The Court:* I will overrule the objection.

"*Mr. Nebel:* The second one: 'Did the failure of plaintiff to sound his horn between the time he first saw defendant's automobile approaching the intersection and the time when defendant's automobile entered the intersection amount to negligence which proximately contributed to cause the collision in which plaintiff was injured?'

"And again we submit that special question should be answered 'No.'

"*Mr. Rogoski:* I object to the argument as improper and prejudicial.

"*The Court:* I will overrule the objection."

The trial court instructed the jury as follows:

"Members of the jury, I am going to hand these questions to you for you to answer. Discuss them. Read them over carefully. If you are unanimous in answering yes or no, make the answer. You will see a line for the foreman to sign. If the foreman signs that, that will mean you were unanimous. The first question is: 'Could plaintiff, after he first saw defendant's automobile approaching the intersection, by the exercise of ordinary care, have prevented a collision with defendant's automobile?' If plaintiff has convinced you from the evidence received here in court that he could not have avoided the accident despite the fact, if it be a fact, if he exercised ordinary care, then the answer would be 'No'. If he could have avoided the collision by the exercise of ordinary care, the answer would be 'Yes'. The second question: 'Did the failure of plaintiff to sound his horn between the time he first saw defendant's automobile approaching the intersection and the time when defendant's automobile entered the intersection amount to negligence which proximately contributed to cause the collision in which plaintiff was injured?' In other words, if you find plaintiff, by sounding his horn, could have avoided the collision but he failed to do so, then his failure to sound his horn—if ordinary care and prudence called for it—there would be contributory negligence on his part. If you find plaintiff's failure to sound his horn was contributory negligence."

The statute relating to special questions reads as follows—CL 1948, § 618.39 (Stat Ann § 27.1019):

"Sec. 39. In all cases where an issue of fact is tried before any court of record, the court shall at the request in writing of the counsel of either party,

instruct the jury if they return a general verdict, also to find upon particular questions of facts, respecting which the issue is joined, to be stated in writing, and shall direct a written finding thereon: Provided, such special questions shall not exceed 5 in number, and shall be each in single, short sentences, readily answered by yes or no. The special verdict, or finding, shall be filed with the clerk, and entered upon the minutes, and when any special finding of facts shall be inconsistent with a general verdict, the former shall control the latter, and the court give judgment accordingly."

In *Beecher* v. *Galvin*, 71 Mich 391, we had occasion to discuss the object of the statute relating to special questions. We there said:

"The object of the statute in allowing such specific questions to be submitted to the jury, and requiring them to make answer thereto, was to ascertain whether the jury had, in making up their general verdict, properly applied the law, as given by the court, to the facts in the case. This can never be done if the jury are to be directed by the court what answer shall be made to each question asked, in the event the general verdict is a certain way. This direction by the court was error, and it was also error for the court to decline to require the jury to make answer to the plaintiff's questions so submitted when asked to do so by plaintiff's counsel."

In *Taylor* v. *Davarn*, 191 Mich 243, plaintiff recovered a civil damage judgment against defendant, a saloon keeper. The following question was submitted to the jury:

"Was the plaintiff's husband, Benjamin Taylor, intoxicated at the time he came to his death on the 1st day of April, 1913?"

After the jury had deliberated for some time, they requested further instructions with reference to the special question.

The court gave the following instruction:

"As you will recall from the instructions I gave you, in order to find for the plaintiff you must find that her husband, Benjamin Taylor, was intoxicated at the time he came to his death. So if you find for the plaintiff your answer to the question would be 'Yes'. If you should find for the defendant you would find that he was not intoxicated at the time he came to his death, and your answer therefore would be 'No'. * * *

"*A Juror:* Nothing difficult, but if it has to be signed all 'Yes' or all 'No'.

"*The Court:* Yes; all 'Yes' or all 'No'. If he was not intoxicated at the time he met his death the plaintiff cannot recover, as I told you. If he was intoxicated at the time he met his death the plaintiff may recover, the other conditions existing to which your attention was called in the general charge. If you should find for the plaintiff it would not be a difficult thing to find the necessary elements to entitle her to recover, namely, he was intoxicated, because, if you do not find he was intoxicated, your verdict cannot be for the plaintiff. If you should find he was not intoxicated at the time of his death, your verdict necessarily must be for the defendant. You may take the paper and retire to your jury room."

We there said:

"We are of the opinion that the error is well assigned under the holdings of this Court in the cases of *Cole* v. *Boyd,* 47 Mich 98; *Maclean* v. *Scripps,* 52 Mich 214; *Beecher* v. *Galvin,* 71 Mich 391; *Mechanics' Bank of Detroit* v. *Barnes,* 86 Mich 632; *Brassel* v. *Railway Co.,* 101 Mich 5.

"It was said in *Maclean* v. *Scripps, supra,* that:

" 'The object of the statute (CL 1871, § 6026; How Stat 1882, § 7606) requiring the jury to answer specifically questions giving their conclusions on the facts necessary to be found to entitle a party to recover, was to ascertain whether or not they had found sufficient facts from the evidence to support

their general verdict under the law as given them by the court. It is the province of the jury to find these facts from the evidence, without aid or suggestion from the court, and this can never be done if the jury are told in advance what facts are necessary to be found to support the verdict, or what answers to the questions propounded will be consistent therewith, or what they must find in order to answer a question propounded in the negative or affirmative. This practice will make the general verdict control the findings, instead of the findings control the general verdict; and thereby the object of the framers of the statute will be defeated. This was the result of the practice indulged in this case. The effect is to make the court, and not the jury, decide the main issues in the case. *Cole* v. *Boyd,* 47 Mich 98. The special findings of the jury were sufficient to support the general verdict, had the proceedings upon which they were based not been erroneous.'

"The question submitted in this case was an important one. The question as to whether Taylor was intoxicated at the time of his death was the pith of plaintiff's case. Unless plaintiff was able to establish that fact, the jury were instructed that no recovery could be had. In view of the importance of the question, the instruction that their answer to the special question must be in harmony with their general verdict, and advising them what their answer should be under certain circumstances, was clearly error because it violated the rule laid down in the foregoing cases."

In *Pecor* v. *Home Indemnity Company of New York,* 234 Wis 407 (291 NW 313), the court said:

" 'It is reversible error for the trial court by instruction to the jury to inform the jury expressly or by necessary implication of the effect of an answer or answers to a question or questions of the special verdict upon the ultimate right of either party litigant to recover or upon the ultimate liability of either party litigant.' *Banderob* v. *Wisconsin Cen-*

*tral R. Co.,* 133 Wis 249, 287 (113 NW 738); *Beach* v. *Gehl,* 204 Wis 367, 371 (235 NW 778); *Anderson* v. *Seelow,* 224 Wis 230, 233 (271 NW 844).

"There is an abundance of authority to the proposition: that it is reversible error for either the court or counsel to inform the jury of the effect of their answer or answers upon the ultimate result of their verdict. If single instances of prejudicial statements and arguments be held reversible error, repeated instances multiply the gravity of the error."

The purpose of special questions is to enable the court to learn what view the jury takes of the material issues and their ability to make correct inferences from existing facts. See *Cole* v. *Boyd,* 47 Mich 98; *Durfee* v. *Abbott,* 50 Mich 479; and *Hartley* v. *A. I. Rodd Lumber Co.,* 282 Mich 652.

Mr. Justice REID relies upon *Holman* v. *Cole,* 242 Mich 402, to sustain his theory that instructions from the court to the jury as to how they should answer special questions is not necessarily reversible. It is significant to note that the judgment in that case was reversed because plaintiff's counsel asked each juror on his *voir dire* examination whether he was interested in a particular insurance company. The following is quoted from the opinion for the purpose of showing what the court said relative to the issue of the court instructing the jury on special questions:

"In the instructions given relative to the special questions when the jury came into court and announced a verdict for plaintiff, the trial judge coupled up the answers which they should give with the conclusion they had reached as to plaintiff's right to recover. They were told that if they meant, by their verdict that defendant was guilty of negligence, it would follow that he had neglected to do what an ordinarily prudent man would have done under like circumstances. In effect, he said to them,

that, unless they changed their general verdict, the second question should be answered in the affirmative. When a proper question is submitted, it should be answered as the jury find the fact to be. They should not be instructed what effect their answer will have on the general verdict they have announced, or on which they may later agree. We are impressed that they might have understood from what the court said to them that if they desired their general verdict to stand they must answer the second question in the affirmative. Were this the only error complained of, we should, however, be loath to reverse because of it."

It can readily be seen that what the court said on this issue was unnecessary and clearly is *obiter dicta* and as such is not a precedent upon which rights of parties should be determined.

Because the court permitted plaintiff's counsel to argue to the jury how to answer the special questions if they returned a verdict in favor of plaintiff, and because the court gave the jury the following instruction:

"*The Court:* If plaintiff's failure to sound his horn was contributory negligence on his part, then you would answer that question 'Yes'. If there wasn't contributory negligence on his part, then you would answer that question 'No'."

reversible error was committed. It follows that the judgment must be reversed and a new trial granted. Defendant may recover costs.

DETHMERS, BUTZEL, CARR, BUSHNELL, and BOYLES, JJ., concurred with SHARPE, J.