## PATRICIA A. JOHNSON AND ANOTHER v. CORNELIUS O'BRIEN AND ANOTHER.

105 N. W. (2d) 244.

July 29, 1960—Nos. 37,800, 37,801.

*Ryan, Ryan & Ebert,* for appellants.
*Carl E. Erickson,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Two appeals from an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial in two personal injury actions which were tried together.

The cases were submitted to the jury for a special verdict under Rule 49.01, Rules of Civil Procedure, and arose out of the following fact situation.

Defendants owned a two-story building in Deerwood, Minnesota. The first floor was rented and used as a grocery store, the second floor was divided into two apartments, front and back. Both apartments were served by an inside stairway and the back apartment was served

by an outside stairway of wooden construction which was built sometime prior to 1923.

On July 10, 1955, an agent of the defendants rented the back apartment to a Mrs. Elletson, age 70, on an oral month-to-month tenancy. There was no covenant to repair by the defendants. The outside stairway was leased as part of the back apartment and was not used in common by the other tenant.

On October 3, 1955, Mrs. Elletson's son and his wife, the plaintiffs, came to visit her. While they were using the back stairway, one of the treads, second from the top, gave way and the son's wife fell to the ground and sustained a fracture of the anterior border of the sixth cervical vertebra.

Defendants do not question the amount of the damages awarded. However, with respect to their liability and the conduct of the trial, defendants raise four basic issues which are necessary to a determination of this appeal.

Defendants contend first that the rule of law applied by the court as to the liability of a landlord is incorrect. In that connection the court instructed the jury as follows:

"In the absence of agreement, he is under no obligation to repair things damaged or deteriorating after the start of the lease. He has no responsibility to persons on the land for conditions developing after the start of the lease. The owner is, however, under obligation to disclose to the lessee, Mrs. Elletson in this case, concealed, dangerous conditions existing when the possession is transferred, when he has information which would lead a reasonable prudent owner, exercising due care, to suspect that the danger exists and that the tenant, exercising due care, would not discover it for himself and which conditions are not open to the observation of the tenant then he must at least disclose such information to the tenant or be found lacking in due care."

In the memorandum accompanying its order denying defendants' motion for a new trial, the court relied on Breimhorst v. Beckman, 227 Minn. 409, 418, 419, 35 N. W. (2d) 719, 726, where we stated that the liability of a landlord "is not restricted to those instances where the lessor has actual knowledge of the dangerous condition of the premises,

but includes those cases where he has information which would lead an ordinarily reasonable man to suspect that danger exists," and that "The liability for concealing or failing to disclose a dangerous condition unknown to the lessee is based on the theory of negligence." This rule was applied in the Breimhorst case in determining whether the trial court erred in directing a verdict for the landlord and in denying plaintiff's motion for a new trial. There was no evidence in that case from which a jury could justifiably have found that the lessor ought reasonably to have suspected that a dangerous condition existed.

Defendants contend that the authorities cited in the Breimhorst case do not support the rule therein followed. They contend that in Murphy v. Barlow Realty Co. 214 Minn. 64, 7 N. W. (2d) 684, actual knowledge of the defect was present and that Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355, involved a situation in which an injury occurred on a stairway used in common with other tenants.

We find in 1 Tiffany, Landlord and Tenant, § 96b, also cited by the court in the Breimhorst case, that a lessor is liable to persons rightfully on the premises for injuries caused by defects or dangerous conditions existing at the time of the leasing, which, while not apparent to the lessee, were known to the lessor and of which he failed to inform the lessee, "And his liability extends not only to dangerous conditions of which he actually knows, but also to those the existence of which he has reasonable ground to suspect."

In 32 Am. Jur., Landlord and Tenant, §§ 672 and 673, a distinction is made between a majority and a minority view, the majority holding that the landlord must have actual knowledge. The minority view is that the landlord who rents premises which are in an unsafe and dangerous condition on account of latent defects is under a duty to exercise reasonable care to discover such defects and apprise the tenant thereof and that a failure to exercise such care renders him liable to the tenant[1] for injury he may receive therefrom without

---

[1]Duties and liabilities of a landlord to those on the premises by consent of the tenant are the same as to the tenant, and such guest or invitee will have no greater right than the tenant himself would have had. 52 C. J. S., Landlord and Tenant, § 418.

negligence on his part. For this same distinction, see also 52 C. J. S., Landlord and Tenant, § 417.

In Prosser, Torts (2 ed.) § 80, we find the following comment:

"Some courts apparently require that the lessor have actual knowledge of the existence of the condition before he is under any duty in regard to it. *The greater number have held, however, that it is sufficient that he has information which would lead a reasonable man to suspect that the danger exists, and that he must at least disclose such information to the tenant.* Tennessee has gone even further, and has imposed upon the lessor an affirmative duty to use reasonable care to inspect the premises before transfer; but the decision has not been followed in other jurisdictions, where it is generally agreed that there is no obligation to inspect or investigate in the absence of some reason to believe that there is a danger. There is of course no duty to disclose conditions which are known to the tenant, or which are so open and obvious that he may be expected to discover them when he takes possession." (Italics supplied.)

It would serve no useful purpose to analyze in detail the authorities cited by the defendants in support of their contention. We believe that the rule established in the Breimhorst case, as embodied in the instructions of the present case, is correct and well founded in reason and justice.

■ Accordingly, where a landlord has information which would lead a reasonably prudent owner exercising due care to suspect that danger exists on the leased premises at the time the tenant takes possession, and that the tenant exercising due care would not discover it for himself, then he must at least disclose such information to the tenant.[2] Under the circumstances here a question of fact was properly presented for the jury.

We agree with the trial court that "To require one to use that care which an ordinarily prudent person would exercise under the same

[2]See, Harkrider, *Tort Liability of a Landlord,* 26 Mich. L. Rev. 260; James, *Tort Risks of Land Ownership: How Affected by Lease or Sale,* 28 Conn. B. J. 127, 129 to 131.

or similar circumstances can hardly be onerous, unreasonable or oppressive."

The following Minnesota authorities may be referred to in support of defendants' position: Harpel v. Fall, 63 Minn. 520, 65 N. W. 913; Tvedt v. Wheeler, 70 Minn. 161, 72 N. W. 1062; Kayser v. Lindell, 73 Minn. 123, 75 N. W. 1038; Farley v. Byers, 106 Minn. 260, 118 N. W. 1023; Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786; Daley v. Towne, 127 Minn. 231, 149 N. W. 368; Keegan v. G. Heileman Brg. Co. 129 Minn. 496, 152 N. W. 877, L. R. A. 1916F, 1149; Cederberg v. Nelson, 179 Minn. 104, 228 N. W. 352; Normandin v. Freidson, 181 Minn. 471, 233 N. W. 14; Murphy v. Barlow Realty Co. 214 Minn. 64, 7 N. W. (2d) 684; Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355; Mani v. E. Hugo Erickson, Inc. 209 Minn. 65, 295 N. W. 506; Nickelsen v. Minneapolis, N. & S. Ry. 168 Minn. 118, 209 N. W. 646; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; Johnson v. Theo. Hamm Brg. Co. 213 Minn. 12, 4 N. W. (2d) 778; Ryberg v. Ebnet, 218 Minn. 115, 15 N. W. (2d) 456; Honan v. Kinney, 205 Minn. 485, 286 N. W. 404. To the extent that the rule in these cases might be interpreted as meaning that only actual knowledge of defects on leased premises constitutes a prerequisite to the liability of a landlord, they are expressly overruled.

The second issue is whether counsel may comment to the jury as to the legal effect of its answer to questions in rendering a special verdict pursuant to Rule 49.01, Rules of Civil Procedure.

Four questions pertinent to this issue were submitted to the jury.

"1. Did a condition involving unreasonable risk of bodily harm to persons using the outside stairway exist on the date of leasing of these premises to Mrs. Elletson, July 10, 1955?

\* \* \* \* \*

"2. Should Cornelius and Sadie O'Brien have been aware of the existence of the said dangerous condition in the exercise of due and reasonable care at the time of leasing to Mrs. Elletson, July 10, 1955?

\* \* \* \* \*

"3. Did Mrs. Elletson know of the said dangerous condition at

the time of leasing, July 10, 1955, or at any time prior to the date of the stair failure, October 3, 1955?

*  *  *  *  *

"4. Should Mrs. Elletson have become aware of the said dangerous condition in the exercise of due and reasonable care between July 10, 1955 and October 3, 1955?"

With respect to the foregoing questions No. 3 and No. 4 counsel for the plaintiffs stated to the jury:

"* * * Now I have also indicated to you what I believe is the appropriate answer to that question, the answer to Number 3 and Number 4 should be, 'No.'

"If the answers to Number 3 and Number 4 were to be answered in any other way, then the burden would be shifted from the shoulders of Mr. and Mrs. O'Brien to the shoulders of Mrs. Elletson."

■ Defendants contend here that these statements to the jury constitute prejudicial error as arguing the ultimate legal effect of answers to the special questions. In McCourtie v. United States Steel Corp. 253 Minn. 501, 93 N. W. (2d) 552, we held that it was prejudicial error for the court to inform the jury in its instruction, expressly or by necessary implication, of the effect of an answer to a question of the special verdict upon the ultimate right of either party to recover or on the ultimate liability of either party, where the verdict pursuant to such instruction was excessive. We agree that the conduct of counsel here does constitute error in view of the purpose of the special verdict, which is as stated in the McCourtie case (253 Minn. 516, 93 N. W. [2d] 562):

"* * * to permit the jury to make findings of ultimate facts, free from bias, prejudice, and sympathy and without regard to the effect of their answers upon the ultimate outcome of the case."

See, Mitchell v. Perkins, 334 Mich. 192, 54 N. W. (2d) 293; Hurley v. McMillan (Tex. Civ. App.) 268 S. W. (2d) 229; Pecor v. Home Ind. Co. 234 Wis. 407, 291 N. W. 313.

We do not believe, however, that such error constituted grounds

for a new trial unless it was prejudicial. Bailey v. Bach, 257 Wis. 604, 44 N. W. (2d) 631; Texas Employers' Ins. Assn. v. Sevier (Tex. Civ. App.) 279 S. W. (2d) 473; Ferderer v. N. P. Ry. Co. 77 N. D. 169, 42 N. W. (2d) 216.

At the termination of the alleged misconduct of plaintiffs' counsel, defendants moved for a mistrial which motion was denied by the court. The trial judge heard the argument and was able to observe the effect, if any, upon the jury. Under Rule 61 of Rules of Civil Procedure, errors or defects in the proceeding which do not affect the substantial right of the party must be disregarded. Also error may be rendered harmless where the court instructs the jury to disregard remarks of counsel. 2 Mason's Dunnell, Minn. Practice, § 3310.

Under the record here immediately after counsel's comments the court instructed him to refrain from arguing the results of the answers and admonished the jury to "eradicate it entirely from your mind so far as it may influence your decision in this case." Also in the instructions the court stated: "Do not speculate as to the legal result of your answers. You are concerned only with deciding these disputes between these parties which we cannot agree upon."

A review of the record shows evidence to sustain the findings as made by the jury to special questions Nos. 3 and 4, namely: That Mrs. Elletson, the tenant, did not know of the dangerous condition at any time between July 10 and October 3, 1955, nor should she have become aware of the said dangerous condition in the exercise of due and reasonable care between the aforementioned dates. Under these circumstances we cannot say that the error was prejudicial and constituted grounds for a new trial.

■ Defendants also raise as an issue the admissibility of evidence regarding property transfers made by the defendants to their children shortly after this injury occurred; also the comment made by the court as to what the jury could consider regarding this evidence. As near as can be determined, with the exception of one authority,[3] it is uniformly held that evidence of one's property transfers after the occurrence of

---

[3] Amsinger v. Najim, 335 Mo. 528, 73 S. W. (2d) 214, cited in 2 Wigmore, Evidence (3 ed.) § 282, note 3, as unsound.

some event which may render him liable in damages is admissible to show a consciousness of liability and a purpose to evade satisfaction of it. 20 Am. Jur., Evidence, § 279; 2 Wigmore, Evidence (3 ed.) § 282; Annotations, 80 A. L. R. 1139 and 65 A. L. R. 1307; Klein v. Pasch, 153 Minn. 291, 190 N. W. 338.

As to this issue the court instructed the jury that the evidence of property transfers by the defendants to their children "was only admitted as it might have some weight as indicating, if it does, that the defendants, O'Briens, felt they had done something wrong to right which their property might be resorted to. It was only admitted for your consideration as to whether or not it showed a consciousness of liability and a purpose or intent to evade the satisfaction of it. Their own conclusions as to their liability may have been entirely erroneous. In this connection, you should remember and give proper weight to the evidence of the defendants as to the reasons which prompted their transfer."

In view of the applicable law, we do not regard the admission of evidence as to the property transfers as error, and accordingly the instructions were proper.

The defendants' fourth contention is that they were prejudiced by certain portions of the instructions given to the jury. One of which, namely, the admissibility of evidence of property transfers, has been discussed previously and it is not necessary to reiterate here. See, 1 Mason's Dunnell, Minn. Practice, § 1537, note 10.

Defendants also referred to comments of the trial court with respect to the removal of the stairway by the defendants, which removal was "undoubtedly the exercise of good business judgment rather than to repair it." Defendants contend that this statement infers the necessity of repairing the whole stairway rather than merely the damaged step.

Upon a review of the instructions it appears that the purpose of the court's comment was to correct a comment made by plaintiffs' counsel to the effect that the defendants could have brought the whole stairway or certain portions of it into the courtroom. Whereupon the court commented that the defendants "preserved that stairway so long as it furnished any purpose in this lawsuit and to tear it down was un-

doubtedly the exercise of good business judgment rather than to repair it. To let that act or those acts enter into your determination as to what an ordinarily, prudent person should have done in the exercise of due care before October 3, 1955 would be unfair, highly prejudicial to all of the defendants in this case, and be a travesty upon justice. You are specifically instructed to disregard that evidence and Mr. Erickson's argument in regard thereto."

At best the prejudice, if any, would have to result from inference. Under these circumstances, and in view of the instructions subsequently given, we do not believe the comment was prejudicial.

Affirmed.

KNUTSON, JUSTICE (dissenting).

I cannot agree with the majority in this case. At least since Harpel v. Fall, 63 Minn. 520, 524, 65 N. W. 913, 914, we have followed the rule that—

"* * * where there is no agreement to repair leased premises by the landlord, and he is not guilty of any fraud or concealment as to their safe condition, and the defects in the premises are not secret, but obvious, the tenant takes the risk of their safe occupancy; and the landlord is not liable to him or to any person entering under his title, or who is upon the premises by his invitation, for injuries sustained by reason of the unsafe condition of the premises."[4]

---

[4]See, Tvedt v. Wheeler, 70 Minn. 161, 72 N. W. 1062; Kayser v. Lindell, 73 Minn. 123, 75 N. W. 1038; Farley v. Byers, 106 Minn. 260, 118 N. W. 1023; Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786; Daley v. Towne, 127 Minn. 231, 149 N. W. 368; Keegan v. G. Heileman Brg. Co. 129 Minn. 496, 152 N. W. 877, L. R. A. 1916F, 1149; Cederberg v. Nelson, 179 Minn. 104, 228 N. W. 352; Normandin v. Freidson, 181 Minn. 471, 233 N. W. 14; Murphy v. Barlow Realty Co. 214 Minn. 64, 7 N. W. (2d) 684; Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355; Mani v. E. Hugo Erickson, Inc. 209 Minn. 65, 295 N. W. 506; Nickelsen v. Minneapolis, N. & S. Ry. 168 Minn. 118, 209 N. W. 646; Mix v. Downing, 176 Minn. 156, 222 N. W. 913, 13 Minn. L. Rev. 392; Johnson v. Theo. Hamm Brg. Co. 213 Minn. 12, 4 N. W. (2d) 778; Honan v. Kinney, 205 Minn. 485, 286 N. W. 404.

In Mix v. Downing, 176 Minn. 156, 158, 222 N. W. 913, 914, 13 Minn. L. Rev. 392, we said:

"Where a landlord makes no agreement to repair the obvious unsafe condition of the leased premises he is not liable, in the absence of fraud or concealment, to the tenant or to persons entering upon the premises at the tenant's invitation for injuries sustained by reason of such unsafe condition."

In probably the last case in which this question was directly considered, Ryberg v. Ebnet, 218 Minn. 115, 117, 15 N. W. (2d) 456, 457, we said:

"* * * It is a well-known rule, settled in this state and universally accepted, that if there is no agreement by the landlord to repair the demised premises; if he is not guilty of fraud or concealment as to their safe condition; if defects in the premises are obvious and do not constitute a hidden danger, nuisance, or trap; and if there is no showing that at the time the premises were leased they were unfit for their intended purpose, the tenant takes the risk as to the safety of their occupancy, and the landlord is not liable in tort to invitees of the tenant for injuries received upon the premises by reason of such defects."

Now, on the basis of Breimhorst v. Beckman, 227 Minn. 409, 35 N. W. (2d) 719, the majority would overrule this entire line of cases. What we said in the Breimhorst case with respect to the liability of a landlord was purely dictum. We neither considered nor overruled the cases in which the liability of a landlord under these circumstances has been settled and consistently followed for over 60 years, and it is unthinkable that in that case we intended to overrule all these cases by implication. It is my opinion that we should adhere to our former rule and that the case should be sent back for a new trial based upon the rule of law which we have followed over all these years.

The majority admits that it was error to permit plaintiffs' counsel to argue to the jury the legal effect of a special verdict but held that it was error without prejudice. I cannot agree with this position. In McCourtie v. United States Steel Corp. 253 Minn. 501, 93 N. W.

(2d) 552, we held that it was prejudicial error for the trial court to instruct the jury as to the legal effect of a special verdict. It is equally devastating to permit counsel for a plaintiff to argue to the jury that which we have held the court may not do. Here, again, I think the error was prejudicial and that it requires a new trial.

With respect to the admissibility of evidence regarding property transfers made by defendants after the injury occurred, I have serious doubts as to the propriety of admitting such evidence in a case involving nothing more than pure negligence. In cases where such transfers might be evidence of a guilty conscience, clearly it is admissible. Here, however, there is nothing involved but failure to exercise due care, and it is difficult to see how such evidence can have any bearing on the liability which rests upon such negligence, if any there was.

DELL, CHIEF JUSTICE (dissenting).

I certainly cannot agree with the majority either. I concur with everything that has been said in the dissent written by Mr. Justice Knutson.